**STATE of Missouri, Respondent,**

v.

**Chester Charles SIMERLY, Appellant.**

**No. 55792.**

Supreme Court of Missouri, Division No. 1.

March 8, 1971.

John C. Danforth, Atty. Gen., John W. Cowden, Asst. Atty. Gen., Jefferson City, for respondent.

R. H. Mos, Jr., Farley, for appellant.

HOUSER, Commissioner.

Chester Charles Simerly was charged with and convicted by a jury of incest, under § 563.220, RSMo 1969, V.A.M.S., by committing fornication with his 15-year-old daughter G————. He was sentenced to the maximum punishment fixed by the statute: 7 years' imprisonment. After an unavailing motion for new trial he has appealed from the judgment of conviction.

■ Appellant's sole point is that the court erred in not granting a new trial because the State's evidence was based upon the uncorroborated testimony of the prosecutrix, testimony which was "confusing and conflicted with the physical facts." Appellant relies heavily upon State v. Tevis, 234 Mo. 276, 136 S.W. 339, for the proposition that a conviction for incest based upon the uncorroborated testimony of a prosecutrix cannot stand where that testimony is contradictory, or when it is not convincing when applied to the admitted facts. Appellant argues that prosecutrix was "very confused regarding the act allegedly taking place on November 21, 1969"; was unable to state with certainty on what day of the week it occurred; was unable to describe the area where the act took place although she testified she had been there many times previously; and that she demonstrated an inability to describe a house between Smithville and Edgerton where she testified she and her father had had sexual intercourse a number of times.

We do not read confusion in prosecutrix' testimony as to the act or as to the time and place when and where she says the act was committed, nor do we find any incapacity on her part to describe the house where other acts of incest are alleged to have taken place. On direct examination G———— testified that on November 21, 1969 she was living in a house trailer in Platte County with her parents and six brothers and sisters; that on that day she and her father drove to St. Joseph to see a motion picture, "Carman, Baby," a "dirty" show playing at an outdoor theatre; that the route they took home was Interstate 29, by Dearborn, crossing the Platte River; that her father stopped the car off to the side of the road on the Platte River in Platte County, not very far off the road— "It's just a little turn in and you drive your car—oh, it's not very far, kinda off from the highway." On cross-examination she was asked on what day of the week November 21, 1969 fell and she answered "I think it was on a weekend. Q. On Satur-day or Sunday? A. Saturday. Q. Or on Friday. A. Friday night, because we usually went to the show on Friday night." Quizzed with respect to the place, she testified that it was 8 miles from Dearborn on a blacktop highway which she thought was "Z"; that " * * * there is just a little turn off right there, I guess where they pull the boats and stuff in down there. It's just a blacktop. Then there is a hill over on that side (indicating), a lot of trees, stuff on it back there. That's all. There wasn't any house or anything around." Although she acknowledged that she did not know directions, she stated that the place was not very far from the road; that you could hear another car coming; that there were no trees between them and the highway, but that no car passed; that although it was "right there in the open," it was dark, about 1 a. m.; "it was pitch black dark"; that it was cold but they turned the heater on and it was warm in the car "at first anyway." She described in graphic terms a sexual intercourse between her and her father on that occasion and testified that intercourse between them started when she was seven or eight years of age and occurred two or three times a week, "almost every weekend"; that her father told her that if she told anyone they would put her in reform school and he and her mother would go to prison and she would never see them or the kids again; that she was afraid of her father; that before an intercourse her father would ask her, and "if you didn't do it you had a heck of a time with your darn life. It was just h-e-l-l, as far as everything was concerned, if you didn't do it. If you did do it you were okay for awhile, until the next time he asked you. * * * it was rotten. The kids generally came down on the weekend. If you wanted to go home with them for that weekend, if you didn't give in to him, you couldn't do anything that you really wanted to. If you didn't go to bed with him and stuff like that you didn't get to do anything and if you did go to bed with him he would treat you like you was a queen."

The foregoing does not indicate confusion on the part of prosecutrix with respect to the act or the time and place so as to require the setting aside of this conviction.

Nor does her testimony about the house between Smithville and Edgerton demonstrate confusion. She testified that she and her father had intercourse at that house seven or eight times. She described the route from Smithville to Edgerton. She spoke of roads that turn off; the distance from Edgerton in miles; that it was on a gravel country road. She said there were quite a few old houses between the two towns and conceded that she did not know whether she could find that house again, but she was not asked to describe the house or the place in the house where the alleged activities occurred. Under the circumstances the description given by this 15-year-old girl was sufficiently clear to constitute substantial evidence of the facts in question.

Appellant strongly urges that her testimony is uncorroborated by any witness, both as to the incest charged on November 21, 1969 and the other sexual contacts through the years. It is true that no eyewitness testified to their having engaged in sexual relations but the incest case in which the State could offer eyewitness corroboration would be rare indeed. It is hardly to be expected that people engaging in incestuous relations would do so openly. They would conceal and not reveal themselves to the view of others. Asked whether on various occasions when she was having sexual relations with appellant anyone ever interrupted or saw her she answered, "They didn't see us, no, but if we were in a house and we heard someone, of course, we would quit."

There was ample corroboration, however, in the testimony of prosecutrix and that of her older sister V———— that their mother (who died before trial) knew of and condoned the relationship between appellant and prosecutrix, and that appellant had intercourse with V———— from the time V———— was five years old until she was eighteen, at which age she had a child by her father; that if the girls didn't "give in it was too bad"; that appellant "was just always riding her (G————). If the kid wanted to do something it was all right as long as she went his way, as long as she gave in. If she didn't, well, he was on her shoulders from morning until night. He was bickering at her. Well, it just got nerve-racking. You either did it to get him from picking on you or you were picked on." She testified "Yes, that's the way he treated all of us. If we didn't give in it was too bad. * * * He treated us girls better than he did the boys because us girls had to give in to him and the boys didn't. He treated us girls better."

■ Conceding that under State v. Nash, Mo., 272 S.W.2d 179, testimony of prior incestuous acts with other persons may be admissible under some circumstances, appellant seeks to distinguish Nash, in which the incest occurred relatively close to the time of trial, and the case now being reviewed, in which the incestuous relations testified to by V———— were more remote, going back eight years to 1960. This difference does not nullify the effect of the testimony, but would go only to its weight.

■ Appellant points to the fact that prosecutrix had been living at St. Joseph State Hospital for 9 months prior to the trial, and submits that the fact that she has been "at an institution for treatment of mental problems" seriously weakens her testimony. She testified that she was living there; that she was enrolled at the school at the state hospital, taking 8th and 9th grade arithmetic, English, science and social science, but there is nothing to show whether she was there for treatment for a mental condition, or for observation, or for some other reason. The record does not show that she had been adjudicated incompetent or that she was incompetent. While the fact that she was living at the state hospital might tend

to disparage and weaken her testimony it does not destroy it. It goes merely to the weight of the testimony.

 Appellant, in an attempt to denigrate prosecutrix' reliability as a witness, states that prosecutrix engaged in prolific story writing which was more in the nature of daydreams than fictional prose and that she "hardly ever finishes one." There was considerable evidence with respect to her writings which, although objected to by the State, were admitted in evidence as bearing upon her credibility as a witness. It was for the jury to assess their importance and bearing on the truth of the charge and from this and all the other evidence to determine whether prosecutrix or her father, who denied ever having intercourse with her, was telling the truth.

 The failure of the State to produce medical evidence in support of its case to show that prosecutrix had been violated does not necessarily indicate that her testimony is unconvincing or unreliable. Such evidence is not essential to make a submissible case. State v. West, Mo., 356 S.W.2d 880.

We do not consider that State v. Tevis, supra, is determinative because in that case, unlike this, the only evidence introduced by the State was prosecutrix' own, uncorroborated testimony, which was inconsistent and unlikely in important respects. We prefer to rely upon State v. Nash, supra; State v. West, supra; State v. Akers, Mo., 328 S.W.2d 31, and State v. Gray, Mo., 355 S.W.2d 10, as authorities supporting the action of the circuit court.

Judgment affirmed.

WELBORN, and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the Court.

All of the Judges concur.