**John P. SOPER, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–583.**

Court of Appeals of Alaska.

Jan. 23, 1987.

Sen K. Tan, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant.

John A. Scukanec, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Harold M. Brown, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

John P. Soper was convicted of sexual assault in the first degree. Former AS 11.41.410(a)(4). Soper's youngest daughter, M.S., was his alleged victim. He received a sentence of fourteen years with four years suspended. *See, e.g.,* AS 12.55.-125(c). Soper appeals his conviction and sentence. We affirm.

M.S. was the youngest of Soper's three natural daughters from his second marriage and the victim of the offense for which Soper was convicted. She testified that the first incident of sexual intercourse occurred in early December 1979, one month before her fourteenth birthday; while on a weekend trip to Big Lake with her father. Over the years, it appears that Soper spent most weekends at Big Lake, where he and his second wife purchased recreational property consisting of a cabin, bunkhouse, and outbuildings. Soper was usually accompanied by one or more of his children and other family friends. Soper normally slept in the cabin, and the children slept in the bunkhouse.

M.S. testified that as they drove to Big Lake, in December 1979, Soper began talking to her about her older sister's (N.W.) sexual activities. Upon arriving at the cabin, Soper and M.S. unloaded the truck and started a fire in the fireplace. M.S. said that Soper continued talking about N.W. and asked M.S. if she (M.S.) had ever had sexual intercourse. M.S. told him that she had not, and Soper then asked her if she would have sex with him. M.S. refused. Soper told M.S. that having sexual intercourse with him was the only way she could prove her love for him. M.S. testified that she was scared and confused. Soper undressed M.S. and had sexual intercourse with her.

M.S. testified that Soper had sexual intercourse with her again on the following night, and that he continued having sexual intercourse with her at Big Lake virtually every weekend until she ran away from home in September of 1980. When her brothers and sisters were there, Soper would tell M.S. to come back to the cabin after the others were asleep in the bunkhouse. M.S. testified that Soper told her that she would not become pregnant because he had had a vasectomy.

Soper was tried twice. His first trial ended in a mistrial when the jury was

unable to agree; he testified at both trials and denied having sexual intercourse with M.S. Apparently, his defense was, in essence, that M.S. had always been a problem child, that she ran away from home because she could not get along with his second wife and her brothers and sisters, and that she was lying about the sexual abuse in order to obtain a financial interest in the Big Lake property. It was established at trial that M.S. initiated a law suit in September 1983, seeking an accounting from Soper of a disputed trust agreement involving the Big Lake property.

Prior to the first trial, Soper moved for a protective order seeking to exclude evidence of any uncharged sexual involvement with any of his daughters. It appeared that the state hoped to present evidence that Soper had had sexual intercourse with M.W. between 1963 and 1967 when she was eight to eleven years old, with C.H. between 1967 and 1969 when she was thirteen to fifteen years old, with N.W. between 1970 and 1971 when she was twelve to thirteen years old and, again, between 1973 and 1975 when she was sixteen to eighteen years old, and with T.S. in 1979 when she was sixteen years old. The state argued that this evidence was admissible under Alaska Evidence Rule 404(b) to establish the defendant's motive to seduce each of his daughters as they approached puberty and to establish a common plan to have sexual relations with them. Judge Buckalew ruled that the evidence demonstrated a continuous pattern of sexual involvement with the defendant's daughters that was relevant under A.R.E. 404(b) to establish the motive argued for by the state. Subsequently, the court ruled that the evidence was also relevant to prove the existence of a common plan or scheme. Judge Buckalew recognized that the evidence of Soper's sexual involvement with his other daughters was highly prejudicial, but he concluded that the probative value of such evidence outweighed its prejudicial impact in cases where the uncharged acts

involve a limited class of victims living in the same family unit. He therefore declined to issue the protective order.

N.W. and M.W. apparently testified at both trials. At the second trial, N.W. testified that she had sexual intercourse with Soper on a number of occasions when she was twelve years old (1970) and, again, when she was seventeen years old (1974). M.W. testified that she had sexual intercourse with Soper a number of times when she was eleven years old (1967). Both N.W. and M.W. testified that several incidents occurred at Big Lake, and that Soper had encouraged them to cooperate by telling them it was a way of proving their love for him. N.W. testified that Soper told her that he had had a vasectomy. M.W. was allowed to testify regarding the similarities of her experiences to those of M.S. After reporting the sexual abuse, both M.W. and M.S. were met with disbelief, and family rejection; they were ultimately driven to run away from home.[1]

Soper admitted to having sexual intercourse with N.W. when she was seventeen but denied any sexual involvement with her when she was younger. Soper denied having any sexual contact with M.W. The trial court instructed the jury that if evidence of Soper's sexual involvement with N.W. and M.W. was established, it could be considered only for the limited purpose of showing a "characteristic method, plan or scheme" or motive.

## DISCUSSION

Soper argues that the trial court erred in permitting testimony from N.W. and M.W. regarding their sexual experiences with Soper. A.R.E. 404(b) and 403. The appellate courts of Alaska have considered a similar issue in a number of cases. *See, e.g., Burke v. State,* 624 P.2d 1240 (Alaska 1980); *Johnson v. State,* 727 P.2d 1062 (Alaska App.1986); *Bolden v. State,* 720 P.2d 957 (Alaska App.1986); *Pletnikoff v.*

---

**1.** C.H. and T.S. testified before the grand jury and denied that Soper had ever abused them. They did not testify at Soper's second trial.

590

*State,* 719 P.2d 1039 (Alaska App.1986); *Oswald v. State,* 715 P.2d 276 (Alaska App. 1986); *Moor v. State,* 709 P.2d 498 (Alaska App.1985).

In *Lerchenstein v. State,* 697 P.2d 312 (Alaska App.1985), *aff'd,* 726 P.2d 546 (Alaska 1986), we applied a two-step analysis to determine whether A.R.E. 404(b) evidence is admissible.[2]

■ First, the court determines if the evidence sought to be admitted has relevance apart from propensity. Second, the court determines if the nonpropensity relevance outweighs the presumed highly prejudicial impact of the evidence under A.R.E. 403.[3] Of course, if there is no genuine nonpropensity relevance, the balancing step is never reached. 697 P.2d at 315–16.

In *Burke v. State,* the supreme court recognized a limited "lewd disposition" exception to the exclusionary rule established in Alaska Evidence Rule 404(b). 624 P.2d at 1249–50. The lewd disposition exception was limited to those cases where the prior sexual acts involved the same victim, were part of an ongoing relationship consisting of several separate sexual acts, and where evidence of the entire relationship was necessary in order to place the alleged incident in context and to explain the actions of the accused and the victim. *Id.* at 1249–50. The supreme court cautioned, however, that the damaging effect of such testimony is substantial and that the trial court must carefully weigh its probative value against its prejudicial effect. *Id.* at 1250–51.

In *Bolden* and *Moor,* we were asked to extend this exception to testimony regarding sexual conduct with persons other than the victim. We declined to do so. 720 P.2d at 960; 709 P.2d at 506. In *Bolden, Pletnikoff,* and *Moor,* we also rejected the state's arguments that such evidence was admissible based on its relevance to show

"motive," common scheme, or plan, and to corroborate the prosecuting witness. *See, e.g., Pletnikoff,* 719 P.2d at 1042–44. We adhere to those rulings here.

■ However, we are satisfied that the limited exception for lewd disposition recognized in *Burke* should be extended to cover the testimony of the complaining witness' sisters who were allegedly seduced under substantially similar circumstances at roughly the same age as the complaining witness. We stress that it is membership in a limited class of individuals having highly relevant common characteristics that serve to differentiate the testimony in this case from that offered in *Bolden, Pletnikoff,* and *Moor.* As the state points out, the prosecution's witnesses did not accuse Soper of isolated incidents of sexual abuse. Each testified to a continued pattern of sexual abuse taking place over a substantial period of time. Each was seduced at approximately the same age, under virtually identical circumstances. While some of the incidents appear remote when viewed in isolation, the common experiences of each of these young women establishes a striking pattern of behavior that seems to occupy the middle ground between evidence of character, A.R.E. 404(b), and habit, A.R.E. 406.

We are also satisfied that the twin rationales articulated in *Burke* apply equally to this situation. A sexually-abusing parent has tremendous control over his dependent children. He can pick his time and place to minimize the risk of discovery. A complaint will generally present a swearing contest between the parent denying unlawful conduct and the child alleging it.

In these circumstances, evidence of a pattern of sexual abuse involving other members of the immediate family may tend to make the alleged incident appear much

**2.** Alaska Evidence Rule 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowl-

edge, identity, or absence of mistake or accident.

**3.** Alaska Evidence Rule 403 states, in part:

Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice. . . .

more plausible and probable. The complaining witness' membership in a small class (dependent daughters) tends to unify the various offenses and gives them a strong relevance to the offense charged. *Burke,* 624 P.2d at 1249–50. In addition, the testimony of the various witnesses established a background explaining the relationship between M.S. and Soper, without which M.S.'s story could appear unbelievable and unnatural. Thus, Soper's apparent confidence that he could abuse M.S. with impunity is understandable when we know that he successfully withstood N.W.'s earlier charges. Soper's experiences with N.W. and M.W. also explain his choice of the family's recreational property as a locale for his sexually-abusive activities.

■ Consequently, we conclude that the probative value of the testimony of N.W. and M.W. was significant. It reflected a history of prior sexual assaults against members of a limited class under circumstances highly corroborative of M.S.'s testimony. The trial court did not abuse its discretion in admitting this evidence. A.R.E. 403.

Soper also argues that the trial court should have dismissed the indictment in this case because a legal intern, Julie Werner-Simon, was permitted to be present while the case was submitted to the grand jury in violation of Alaska Criminal Rule 6(k). The rule provides:

> *Who May Be Present.* The prosecuting attorney, the witness under examination, interpreters when needed, and a deputy clerk of the court for the purpose of recording the proceedings may be present while the grand jury is in session.[4] No persons other than the jurors shall be present while the grand jury is deliberating or voting.

Soper points out that the prosecuting attorney who submitted his case to the grand jury allowed Werner-Simon to be present while the case was presented to the grand jury. Even though he does not contend that Werner-Simon was present while the grand jury was deliberating or voting, he nevertheless argues that her presence rendered the resulting indictment invalid. He relies on the fact that Alaska R.Crim.P. 6(k) is modeled on Fed.R.Crim.P. 6(d), and that federal courts have given the comparable rule a very strict application. *See, e.g., United States v. Braniff Airways, Inc.,* 428 F.Supp. 579, 582–83 (W.D.Tex.1977).

The federal cases indeed make it clear that Fed.R.Crim.P. 6(d) lays down a hard and fast rule which allows for no exceptions; the defendant need not show prejudice in order to obtain dismissal of the indictment. 1 C. Wright, *Federal Practice and Procedure: Criminal 2d* § 105 at 241–42 n. 12 (2d ed. 1982). Wright points out that the reasons for the rule are the strong policy of maintaining secrecy in grand jury proceedings, and avoiding any possibility of undue influence. § 105 at 237.

■ While we tend to interpret our Alaska rules consistently with rules from the other jurisdictions upon which they are based, we are satisfied that Soper's indictment should not be dismissed. At the outset we note that Werner-Simon is not accused of breaching the grand jury's secrecy, nor is there any suggestion that her presence in any way influenced the grand jury unduly or otherwise. The general rule in Alaska is that events, occurrences, or happenings before the grand jury will not invalidate a subsequent indictment unless they contributed in some way to the return of that indictment. *See, e.g., Frink v.*

---

**4.** "Prosecuting attorney" is defined in Alaska Criminal Rule 56(a) as follows:

'Prosecuting Attorney' includes the attorney general, assistant attorneys general, deputy attorneys general, and any other attorneys, legal officers and assistants charged by law with the duty of prosecuting the violation of any law, statute or ordinance.

This definition could be read to permit the singular "prosecutor" to include the plural "prosecutors." Therefore, more than one prosecutor may be present at the grand jury without violating Alaska Criminal Rule 6(k). Furthermore, a legal intern may fall within the definition. Thus, Werner-Simon's presence along with the assistant district attorney would not violate the rule.

*State*, 597 P.2d 154, 161 (Alaska 1979) (it makes no sense to dismiss an indictment because inadmissible evidence was presented to the grand jury without first evaluating the probable significance of the inadmissible evidence); *Hohman v. State*, 669 P.2d 1316, 1319–20 (Alaska App.1983) (to overturn an indictment because of alleged grand jury prejudice, a defendant should make a factual showing of prejudice). Thus in the absence of any basis for concluding that Werner-Simon's presence during the presentation of Soper's case to the grand jury undermined the policy of grand jury secrecy or unduly influenced either a witness appearing before the grand jury or the grand jury itself, we decline to dismiss Soper's indictment.

Soper next argues that the trial court erred in failing to instruct the jury that it must unanimously agree on a particular incident of sexual abuse before convicting him. He concedes that no such instruction was requested and that therefore this complaint must be determined under the plain error rule. Alaska R.Crim.P. 47(b). *See State v. Covington*, 711 P.2d 1183 (Alaska App.1985). Soper argues that *Covington* is distinguishable in a number of respects. First, he reasons, M.S. was impeached by substantial, prior, inconsistent testimony. He also notes that while the jury convicted him of a 1980 offense, it acquitted him of offenses which allegedly occurred in 1979. In Soper's view, there is a substantial risk that jurors may have disagreed as to precisely when in 1980 Soper abused M.S., but concluded that he had abused her at least once and returned a verdict of guilty against him.

■ We are satisfied that Soper has not established plain error. As in *Covington*, M.S. testified to a general course of conduct, and the defense was a general denial. Neither M.S. nor Soper concentrated on specific alleged incidents in presenting their cases. Under the circumstances, we find no plain error.

Finally, Soper challenges his sentence as excessive. He points out that he was fifty-five years old at the time of sentencing.

He has no prior criminal record. Soper honorably served in the United States Air Force for twenty-four years. Substantial evidence of community support for Soper was shown at sentencing. He stresses that a number of the children he allegedly sexually abused came to his defense and testified to his being a good father. He points out that none of the young women who accused him contended that he was violent with them or physically injured them in any way. In his view, our prior decisions mandate a sentence of six years or less. *See, e.g., State v. Brinkley*, 681 P.2d 351, 356 (Alaska App.1984), *accord Atkinson v. State*, 699 P.2d 881, 884 (Alaska App.1985), *Depp v. State*, 686 P.2d 712, 721 (Alaska App.1984).

■ Soper may be a model citizen and, but for his sexual abuse, a good father. However, given the extended period of abuse of the named victim, coupled with a verified and substantial history of abusing his daughters, we are satisfied that the trial court was not clearly mistaken in imposing a sentence of fourteen years with four years suspended. *See State v. Andrews*, 707 P.2d 900, 911–13 (Alaska App. 1985), *aff'd* 723 P.2d 85 (Alaska 1986).

The judgment of the superior court is AFFIRMED.