828 P.2d 1304

**STATE of Idaho, Plaintiff–Respondent,**

**v.**

**Donald Marvin TOLMAN,
Defendant–Appellant.**

**Nos. 18195, 18545.**

Supreme Court of Idaho,
Boise Term, February 1991.

March 31, 1992.

Van Bishop Law Offices, Canyon County Public Defender, Debra Ann Orr, argued, Nampa, for defendant-appellant.

Larry J. EchoHawk, Atty. Gen., Michael J. Kane, argued, Boise, for plaintiff-respondent.

BAKES, Chief Justice.

Defendant appellant, Donald Marvin Tolman (Tolman), appeals from convictions of two counts of lewd and lascivious conduct and one count of sexual abuse. Tolman also appeals from the district court's denial of his motion to reduce his sentence.

Tolman was charged with two counts of lewd conduct involving two different boys under sixteen. Tolman was also charged with the separate crime of sexual abuse of a third boy under sixteen. Tolman moved to sever the sexual abuse count from the two lewd conduct counts. The district court denied the motion, concluding that Tolman had failed to show unfair prejudice and that evidence of the sexual abuse count could properly be admitted in the trial of the lewd conduct counts. The following factual or procedural events which occurred at trial form the basis for the issues Tolman raises on this appeal.

Prior to trial, the trial court advised the jury that the defendant was charged with lewd conduct and sexual abuse of minors. The prosecutor asked during *voir dire* if any of the potential jurors knew anyone who had been molested as a child. Two jurors acknowledged that they did and, while they were not removed for cause, they were removed by the defendant's peremptory challenges. A third juror, Mr. Stone, on the second day of trial, advised the court that his wife had been abused.[1]

1. After Mr. Stone revealed to the court that his wife had been sexually molested when she was young, he had the following conversation with the defense counsel and the court:

    STONE: In all sincerity, I don't think that it would affect my judgment in making the decision. What I said in the letter, the incident with my wife, I didn't think of when you asked me the question—
    COUNSEL: Was that there—
    STONE: But when I thought about it—
    COUNSEL: —as you were sitting during listening to the testimony yesterday?

    STONE: No. No. When I got home, I just thought about it; didn't have anything to do with the testimony.
    \* \* \* \* \* \*
    COURT: I have a couple of questions. Mr. Stone, will this information that you have about your wife's past history in any way make you unable to perform your duties that you have undertaken as a juror in this case?
    STONE: No.
    COURT: Do you feel that you can still be fair and impartial to both the defendant and to the State in this matter?
    STONE: Yes.

After the court and counsel questioned Mr. Stone, the court decided not to remove him because it found no evidence that Stone would have been removed for cause, that he was unable to perform his duties as a juror, or that his non-disclosure tainted the *voir dire* process. The defense objected to Mr. Stone's continuing, claiming that he, like the other two jurors, would have been peremptorily challenged had he been forthcoming with the information at *voir dire*.

In another assertion of error, Tolman argues that at trial, one of the jurors asked the court if they could question the witnesses. The court advised the jurors that they could ask questions of witnesses by submitting written questions to the court. The defense objected to the procedure out of the presence of the jury, but the court overruled the objection on the basis that "better communication between people who are receiving information is enhanced by a two-way communication." Only one juror submitted a question at trial, to which the state objected. The court ruled that the question could not be answered, but did not inform the jury whether it was the state or the defense who had objected to the question. Tolman claims that the jury could therefore have inferred that he was the one who prevented them from hearing the evidence.

In a separate case, Tolman had been charged with committing a prior sexual act with the same victim as that listed in Count I of the information in this case. A few days prior to commencement of this trial, Tolman was acquitted of that charge. In this case, the court prohibited any reference to the defendant's acquittal, to which the defense objected, claiming that evidence of the acquittal would be relevant both to impeachment and to the credibility of the witness. The court disagreed, holding that the acquittal may have been entered for reasons other than credibility of the victim.

In still another questioned ruling, the court admitted evidence of prior uncharged sexual acts between the defendant and each of the three victims on the theory that the prior acts were relevant to show a common scheme or plan. During the defense cross-examination of one of the victims, he testified that one of the uncharged incidents, the Swan Falls incident, occurred after the incident charged in the information. Tolman moved for a mistrial. The court denied the motion and instructed the jury to disregard the testimony regarding the subsequent Swan Falls incident.

The jury ultimately found Tolman guilty on all three counts. The court sentenced Tolman to a fixed period of ten years followed by an indeterminate term not to exceed life imprisonment on Count I; to a fixed period of fifteen years, followed by an indeterminate period of confinement not to exceed life on Count II; and to a fixed period of ten years, followed by an indeterminate period of confinement not to exceed five years on Count III, the three sentences to run concurrently. Tolman filed a I.C.R. 35 motion seeking a reduction of his sentence; the court reviewed the recommendations of the Department of Corrections and denied the motion. Tolman appeals his convictions and the denial of his motion to reduce his sentence.

On appeal, Tolman argues the trial court erred by: (1) refusing to declare a mistrial when one of the jurors failed to reveal that his wife had once been sexually molested; (2) admitting testimony of prior uncharged sexual acts; (3) allowing the jurors to question the witnesses; (4) refusing to allow evidence of Tolman's acquittal in a prior case; (5) failing to sever count III from

---

COURT: Do you have, because of that incident, any fixed opinion or bias either for or against the defendant?
STONE: No. I mean, I know so little about it.
COURT: And by that you mean so little about the case that is involved against the defendant?
STONE: No. So little about—

COURT: So little about what happened to your wife?
STONE: Yeah.
COURT: Just the fact that there was an incident, do you think that that would make a difference to you in the way that you would approach this case?
STONE: No.

counts I and II; and, (6) failing to reduce Tolman's sentence.

With regard to the first issue, Tolman argues that the trial court erred by failing to declare a mistrial when juror Stone failed to reveal during *voir dire* by the prosecuting attorney that his wife had been sexually molested as a child. Tolman claims that had Stone been forthcoming with that information, he would have been peremptorily challenged, just as two other jurors with similar revelations were. Tolman argues that under the circumstances, he was denied the full freedom to exercise his peremptory challenges. We disagree.

■ A motion for mistrial is directed to the sound discretion of the trial court, and its ruling will not be disturbed absent showing an abuse of discretion. *State v. Talmage,* 104 Idaho 249, 658 P.2d 920 (1983). In *McDonough Power Equipment v. Greenwood,* 464 U.S. 548, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984), the Supreme Court addressed a claim similar to that which Tolman urges today. In *McDonough,* a juror failed to affirmatively respond to a question during *voir dire* as to whether he or any of his family members or relatives had ever sustained an injury resulting in some disability. Only after a three week trial had ended did defense counsel learn that the juror's son had been so injured. The Court held:

> To invalidate the result of a 3–week trial because of a juror's mistaken, though honest, response to a question, is to insist on something closer to perfection than our judicial system can be expected to give. A trial represents an important investment of private and social resources, and it ill serves the important end of finality to wipe the slate clean simply to recreate the peremptory challenge process because counsel lacked an item of information which objectively he should have obtained from a juror on *voir dire* examination.... *We hold that to obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause.*

464 U.S. at 555–556, 104 S.Ct. at 849–850 (emphasis added).[2]

■ The *McDonough* case sets forth the appropriate standard to be applied in this situation. Assuming that Stone failed to answer honestly a material question, our inquiry then becomes whether a correct response by Stone "would have provided a valid basis for a challenge for cause." Under I.C. § 19–2019, Stone would have been subject to removal for cause only if he had displayed "the existence of a state of mind ... in reference to the case, or to either of the parties, which, in the exercise of a sound discretion on the part of the trier, leads to the inference that he will not act with entire impartiality, and which is known in this code as actual bias."

The record shows that Stone was thoroughly questioned by the court and by counsel concerning any possible effect that his wife's molestation would have on his consideration of the case. Stone repeatedly stated that he would be fair and did not think his wife's molestation would affect his judgment in any way. The trial court concluded that Stone was not prejudiced and remained qualified to serve as a juror. That decision was within the trial court's discretion and the court's decision not to declare a mistrial on that basis was not an abuse of discretion. *State v. Talmage,* 104 Idaho 249, 658 P.2d 920 (1983).[3]

**2.** *McDonough* involved a civil products liability action, but the standards articulated in *McDonough* have been applied in the criminal context. *See, e.g., United States v. O'Neill,* 767 F.2d 780 (11th Cir.1985); *United States v. Perkins,* 748 F.2d 1519 (11th Cir.1984).

**3.** We have been cited to a recent case, *Burton v. Johnson,* 948 F.2d 1150 (10th Cir.1991), which held, in a murder case involving the battered woman's syndrome defense, that a juror's failure to disclose her own physical and mental abuse at the hands of her husband warranted reversal of a guilty verdict. In *Burton,* the court applied the *McDonough* test and concluded that the juror's "failure to respond on *voir dire* denied Mrs. Burton a fair trial ..., for it is clear that the juror did fail to answer a material question, and that a correct response would have provided a basis for a challenge for cause."

Next, Tolman contends that the trial court erred in permitting evidence of prior uncharged crimes to go to the jury. Tolman argues that the testimony relating to the uncharged incidents does not fall within the exceptions listed in I.R.E. 404(b) and that the prejudicial impact of such evidence substantially outweighed its probative value.

At trial, the court admitted evidence, over defendant's objections, of prior uncharged sex acts between the defendant and each of the three victims. With regard to J.H., Count III charged Tolman with sexual abuse, that allegedly occurred while J.H. and Tolman were alone in Tolman's house. Prior testimony was admitted relating to similar misconduct in an old, burned down house, with none present save Tolman and J.H., and yet another incident that occurred while J.H. and his brother T.H. were camping with Tolman.

Regarding the victim, D.P., Count II related to an incident that occurred while D.P. and T.H. were at Tolman's house. The trial court admitted evidence of prior misconduct that occurred while D.H., Tolman, and a third party were camping. In Count I, Tolman was charged by T.H. for lewd conduct that occurred during the same episode as that in Count II. T.H. also offered testimony relating to prior incidents, namely, the camping trip with J.H. and Tolman. The trial court allowed the testimony of this uncharged conduct to come in on the theory that such evidence showed a common plan or scheme leading to the charged offense.

Idaho Rule of Evidence 404 states in pertinent part:

(a) Character evidence generally. Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, . . . .

(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

[3–5] Subsection (a) thus sets forth the generally recognized rule that evidence of a defendant's previous crimes or misconduct is not admissible for propensity purposes. *State v. Needs,* 99 Idaho 883, 591 P.2d 130 (1979). However, under subsection (b), evidence of other crimes or wrongs may be admitted when relevant to prove such things as identity, motive, intent, preparation, plan, etc. *State v. Wrenn,* 99 Idaho 506, 584 P.2d 1231 (1978). The exceptions listed in subsection (b) are representative of the types of uses for which evidence of other crimes may be admitted, but the exceptions are not exhaustive. *State v. Sharp,* 101 Idaho 498, 616 P.2d 1034 (1980); *United States v. Masters,* 622 F.2d 83 (4th Cir.1980); *United States v. Beechum,* 582 F.2d 898 (5th Cir.1978).[4] Nevertheless, if such evidence falls within an exception, it may still be barred if the probative value of such evidence is substantially outweighed by its prejudicial impact. I.R.E. 403.

We recently dealt with the precise issue we now face, *i.e.,* whether, in a case regarding lewd conduct and sexual abuse of

948 F.2d at 1159. The court based its conclusion that the juror would have been challenged for cause on the fact that two other prospective jurors had been so challenged and removed.

In this case, we do not find the *Burton* holding persuasive. First, as the *Burton* dissent points out, the trial court has the best "opportunity to observe and evaluate the demeanor" of the potential juror. Further, in this case, the other two members of the panel who acknowledged that they were acquainted with victims of sexual abuse were not challenged for cause but were peremptorily challenged by the defense. Tolman has made no showing that juror Stone would have been challenged for cause, as required by *McDonough.* Thus, this case is different from *Burton,* in which the jurors with similar answers were challenged for cause, allowing the court to infer that the juror who failed to honestly respond during *voir dire* would also have been so challenged.

4. I.R.E. 404(b) is identical to the federal counterpart, and federal cases interpreting this rule are therefore deemed instructive.

a minor, testimony of prior sexual misconduct was admissible under I.R.E. 404(b), in *State v. Moore,* 120 Idaho 743, 819 P.2d 1143 (1991). In *Moore,* we held that such testimony was indeed admissible to show a common scheme or plan and explained our holding as follows:

> Although corroboration is no longer mandatorily required in all sex crime cases, [f.n. 3] corroborating evidence may still be relevant, particularly in sex crime cases involving minor victims. *State v. Schwartzmiller,* 107 Idaho 89, 685 P.2d 830 (1984); *see also Soper v. State,* 731 P.2d 587 (Alaska App.1987); *People v. Covert,* 249 Cal.App.2d 81, 57 Cal.Rptr. 220 (Ct.App.1967). Corroborative evidence in sex crime cases involving youthful victims is often times necessary to establishing the credibility of a young child. Too often the determination of the case rests strictly upon establishing that the victim's testimony is more credible than that of the alleged perpetrator. As was discussed in a UCLA law review article,
>
> > [A]dmission of corroborative evidence serves the dual purpose of reducing the probability that the prosecuting witness is lying, while at the same time increasing the probability that the defendant committed the crime.
>
> *Other Sex Offenses,* 25 UCLA L.Rev. 261, 286 (1977).
>
> Past decisions by this Court spanning more than eighty years have held that evidence of prior sexual misconduct is admissible where relevant to the parties' credibility. In *State v. Hammock,* 18 Idaho 424, 110 P. 169 (1910), it was held:
>
> > *Any evidence of other crimes which developed was so intimately and inseparably connected with the circumstances of this specific offense as to render it admissible as a part of the common criminal design, all of which was necessarily admissible in order to get a clear understanding of*
>
> *the situation of the parties and the probable truth or falsity of this charge.*
>
> 18 Idaho at 429, 110 P. at 170. Where relevant to the credibility of the parties, evidence of a common criminal design is admissible. *State v. Hammock, id.* In addition, in *State v. Schwartzmiller,* 107 Idaho 89, 685 P.2d 830 (1984), this Court held:
>
> > Evidence of similar acts of sexual misconduct between a defendant and the victim or between the defendant and another witness is admissible for corroboration of the victim's testimony in sex crime cases.
>
> 107 Idaho at 93, 685 P.2d at 834.
>
> In the instant case, the proposed testimony regarding acts of abuse previously inflicted by Moore upon other female children in the victim's household corroborates her testimony. *Evidence of all the incidents of abuse, taken together, may provide an evidentiary plan or pattern that tends to make the alleged incidents more plausible and probable.* Accordingly, we hold that the district court did not err in denying Moore's motion in limine.
>
> [f.n. 3] In *State v. Byers,* 102 Idaho 159, 627 P.2d 788 (1981), this Court eliminated the mandatory requirement of corroboration in sex crime cases in Idaho.

120 Idaho at 745–46, 819 P.2d at 1145–46 (emphasis added).

Cognizant of the principles we explained in *Moore,* a substantial number of courts have adopted the rule that evidence of prior misconduct is admissible where it is relevant to the credibility of the parties.[5] As one court stated:

> The offense almost always occurs in private. The only direct witnesses are the prosecuting witness and the defendant. Although circumstantial evidence supplies occasional corroboration, conviction usually hinges upon the credibility of the

---

**5.** *See Bowden v. State,* 538 So.2d 1226 (Ala. 1988); *Soper v. State,* 731 P.2d 587 (Alaska App. 1987); *People v. Hunt,* 72 Cal.App.3d 190, 139 Cal.Rptr. 675 (1977); *Snowden v. State,* 537 So.2d 1383 (Fla.App.1989); *Stwalley v. State,*

534 N.E.2d 229 (Ind.1989); *Andrews v. State,* 529 N.E.2d 360 (Ind.App.1988); *State v. Baker,* 535 So.2d 861 (La.App.1988); *People v. Burton,* 28 Mich.App. 253, 184 N.W.2d 336 (1970); *State v. Simerly,* 463 S.W.2d 846 (Mo.1971).

prosecuting witness. In this kind of case beyond any other, the defendant's plea of innocence challenges the credibility of the alleged victim. The challenge inheres in the very nature of the contest and usually demands an answer long before the prosecution's turn for rebuttal. A minimal defense, even when the defendant elects not to testify, demands that the alleged victim be accused of falsehood, spite or delusion.

*People v. Covert,* 249 Cal.App.2d 81, 88, 57 Cal.Rptr. 220, 224–225 (1967) (footnotes omitted).

■ Applying these principles to the present case, we are persuaded that the trial court did not err in admitting the subject evidence and correctly characterized the evidence as demonstrating a common plan or scheme. The evidence shows that Tolman typically targeted young male victims. The evidence further shows that Tolman shrewdly won over his victims' confidence, trust, and friendship by inveigling them to accompany him on various errands and adventures (taking them camping and inviting them to his home, etc.). Having thus secured their confidence, Tolman then subjected his victims to sexual abuse.

Standing alone, the incidents charged in the information possess only that degree of believability as would naturally attach to the testimony of a young boy counterbalanced by the testimony of the alleged perpetrator, and whatever other circumstantial evidence may have been brought to light. This was clearly the case with respect to count III, which matched J.H.'s word against that of the defendant. However, when these events are taken in conjunction with the detailed testimony elicited as to the prior incidents, the jury was better able to compare patterns and methods, details and generalities, consistencies and discrepancies, and thereby made a more meaningful and accurate assessment of the parties' credibility.

We do not suggest today that any and all evidence of prior sexual misconduct is admissible in sex crime cases merely by placing it under the rubric of corroborative evidence of a common scheme or plan. Furthermore, such evidence is still subject to the limitations imposed by I.R.E. 403 which proscribes both the "needless presentation of cumulative evidence," and evidence whose "probative value is substantially outweighed by the danger of unfair prejudice." The trial court found that neither of these limitations was violated in the instant case, and that holding is consistent with our prior cases.

■ Additionally, Tolman argues that the trial court erred in admitting testimony of J.H. as to the incident that occurred at Swan Falls, which apparently occurred subsequent to the incidents charged in the information. Tolman argues that it was error to admit such evidence because the rule requires that the conduct occur prior to the incidents alleged in the information. We disagree.

We have dealt with this issue on previous occasions and rejected the notion that evidence of subsequent misconduct is *per se* inadmissible. *State v. Stratford,* 55 Idaho 65, 37 P.2d 681 (1934). In *State v. Greensweig,* 102 Idaho 794, 641 P.2d 340 (Ct.App. 1982), the Court of Appeals stated:

The threshold question regarding admission of evidence of other crimes is relevancy. No logical distinction between prior and subsequent crimes is apparent to justify a *per se* rule of the sort appellant asserts. The very rule appellant asserts has been tested and rejected. *State v. Stratford,* 55 Idaho 65, 72, 37 P.2d 681, 684 (1934).

102 Idaho at 798, 641 P.2d at 344. More recently, in *Moore, supra,* we specifically stated that "[e]vidence of *all* the incidents of abuse, taken together, may provide an evidentiary plan or pattern that tends to make the alleged incidents more plausible and probable." 120 Idaho at 746, 819 P.2d at 1146 (emphasis added).[6]

**6.** Even assuming that the admission of testimony regarding the Swan Falls incident was in error, it was not reversible error. The trial court instructed the jury to disregard the testimony regarding the subsequent, Swan Falls incident. Error in admission of evidence may be cured by proper instruction, and it must be presumed that the jury obeyed the trial court's

■ Tolman next argues that the trial court erred in allowing the jurors to ask questions of the witnesses. Tolman claims that such a practice is not allowed under the rules and, further, that defense counsel is placed in the untenable position of being forced to object to questions, thereby allowing the jury to infer that the defense is trying to conceal something from them. Without deciding whether such a practice is permissible—and Tolman points to no rule that specifically prohibits the practice—we simply note that here the jury asked one question which the court did not submit to the witness because it had already been covered. Accordingly, assuming such practice is improper, no question was submitted to a witness by the jury in this case. Moreover, the trial court explicitly instructed the jury that they were not to consider the reasons for any objections. There is no showing that the jury drew any inference from the trial court's refusal to ask the question. Thus we find no error.

■ Tolman also argues that the trial court erred in refusing to allow evidence of his prior acquittal. Apparently, Tolman had recently been acquitted of charges brought by one of the victims in this case and argues the jury had the right to receive that information as it would tend to dispel the adverse impact occasioned by the court's admission of the evidence of prior uncharged acts.

In *State v. Schwartzmiller*, 107 Idaho 89, 92, 685 P.2d 830, 833 (1984), we stated:

A not guilty verdict, standing by itself, can never be taken to establish that the charges brought were based on false accusations, since one may not be convicted of a crime unless a jury finds beyond a reasonable doubt the guilt of the defendant. As stated in *Little v. State*, 413 N.E.2d 639, 643 (Ind.App.1980), "We believe that evidence of false accusations of similar sexual misconduct is admissible on the issue of the victim's credibility.

The allegations, however, must be demonstrably false." ... The exclusion of that line of testimony was not error.

As the district court stated in ruling on this issue:

That issue of credibility is a matter for the jury to determine from all of the various factors that relate to credibility. And the jury may have decided the case for any number of reasons which had absolutely nothing to do with that particular witness's credibility. They may have decided that this witness was truthful, but that some other element which that witness couldn't testify to was not present. Since the court was not present at that trial, I'm in no position to second guess the jury on that.

We believe the reasoning of the district court was correct on this issue. *Schwartzmiller, supra.*

■ Tolman next argues that the trial court erred in failing to sever Count III from Counts I and II. Specifically, Tolman contends that Count III dealt with the charges of sexual abuse brought by J.H. with respect to an incident of abuse that occurred while J.H. was alone with the defendant and which had nothing to do with the incidents charged in the other counts. We need not consider this issue on appeal as the record reflects that Tolman's motion to sever was not timely made pursuant to I.C.R. 12(b)(5). *State v. Martin*, 119 Idaho 577, 808 P.2d 1322 (1991). Nevertheless, we find no error in the trial court's denial of the motion.

■ Finally, Tolman argues that the trial court erred in refusing to reduce his sentence. A motion to reduce a legally imposed sentence is addressed to the sound discretion of the trial court. *State v. Araiza*, 109 Idaho 188, 706 P.2d 77 (1985). After considering all the relevant facts and circumstances surrounding this case and this defendant, we believe Tolman's sen-

direction. *State v. Hedger,* 115 Idaho 598, 768 P.2d 1331 (1989); *State v. Rolfe,* 92 Idaho 467, 444 P.2d 428 (1968); *State v. Urie,* 92 Idaho 71, 437 P.2d 24 (1968). Therefore, this court must presume that the jury did not consider the testimony regarding the Swan Falls incident in

reaching its verdict. Given all the other evidence admitted in this case to prove the defendant's guilt, the jury could easily have reached its verdict without considering the evidence regarding the subsequent, Swan Falls incident.

tence was well tailored to the purpose for which it was imposed. Tolman was characterized by the Department of Corrections' report as being a "high risk offender." The record reveals that Tolman's deviant activities are practically inveterate. He has four prior felony convictions for sexual abuse of children. Accordingly, the sentence was necessary to protect society from his continued sexual abuse of children.

Judgment and sentence affirmed.

BOYLE and McDEVITT, JJ., concur.

BISTLINE, Justice, dissenting.

The majority erroneously holds that the evidence of uncharged crimes was fully admissible under *State v. Moore,* 120 Idaho 743, 819 P.2d 1143 (1991). It was not admissible under the aegis of any prior case precedent.

## PART I.

The complaint filed by the prosecutor contained three counts. Counts I and II charged Tolman with violating I.C. § 18–1508 (lewd conduct with a minor or child under sixteen). Count I alleged Tolman committed fellatio with T.H., a twelve year old boy. Count II alleged the same type of act, but with D.P., a thirteen year old boy. Count III alleged Tolman violated I.C. § 18–1506 (sexual abuse of a child) when he licked the penis of J.H., a ten year old boy.

At trial, all three boys testified in support of those charges. That testimonial evidence, if believed by the jury, would sufficiently support a guilty verdict on all three criminal charges. T.H. and D.P. testified that they skipped school one day and went to Tolman's house where he molested them. J.H. testified he was molested by Tolman in the bathroom at Tolman's house.

Additionally, the boys were allowed to testify to other *uncharged* acts of sexual molestation. T.H. testified that Tolman molested him when they were camping and again when they were deer hunting. D.P. testified that Tolman molested him when

they were elk hunting. J.H. testified that Tolman molested him two other times: once in an abandoned house and a second time while they were camping.[7]

Defense counsel vigorously objected to the introduction of this evidence, arguing that the evidence was inadmissible under I.R.E. 404(b). The court overruled the objection holding that the evidence was admissible under that rule because it was evidence which tended to establish that Tolman's activities relative to the youths was a common plan or scheme.

The court, to its credit, did give an oral instruction which attempted to limit the purpose for which the evidence could be considered:

> Evidence may be offered for the purpose of showing that the defendant has engaged in prior similar conduct or activity other than that for which he is on trial. *Such evidence, if believed, is not to be considered by you to prove that the Defendant is a person of bad character or that he has a disposition to commit crimes.*
>
> Such evidence may be received and may be *considered by you only for the limited purpose of determining, if it tends to show, a characteristic method, plan, or scheme* used in the commission of the offense alleged in this case.
>
> *For the limited purpose for which you may consider such evidence, you must weigh it in the same manner you do all other evidence* in the case. *You are not permitted to consider such evidence for any other purpose.*

R., Vol. I, 95 (emphasis added).

## PART II.

Tolman on appeal renews his argument that the evidence was inadmissible under I.R.E. 404(b). That rule provides that:

> Evidence of other crimes, *wrongs, or acts is not admissible to prove the character of the person* in order to show he acted in conformity therewith. It may, however, be admissible for other pur-

---

**7.** The court later struck the testimony about the camping incident.

poses, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

(Emphasis added.)

As noted above, the district court admitted the evidence as proof of a common scheme or plan. The common scheme or plan exception as it applies to child sex abuse cases was discussed in *State v. Moore*, 120 Idaho 743, 819 P.2d 1143, a recent decision of this Court with which I disagreed, and continue to disagree as to sufficiency of any carefully thought out analysis. There, the defendant was charged with lewd conduct with a minor and sexual abuse of a child with his granddaughter during the period of time the child was six or seven years old. Moore sought to exclude evidence that he had allegedly engaged in similar misconduct with his daughter when she was between the ages of nine and thirteen. The district court denied Moore's motion in limine, holding that the evidence showed a common scheme or plan.

The Court in a three-to-two opinion affirmed the district court's ruling for two reasons: first, the majority affirmed the district court's conclusion that the proposed testimony "demonstrate[d] a common criminal plan or scheme on Moore's part which was probative of his motives or lustful disposition, and was indicative of the specific intent required for a conviction." *Moore*, 120 Idaho at 745, 819 P.2d at 1145. In that respect, the instant case is similar to *Moore* in that the evidence here demonstrates Tolman's general plan to molest young boys of the neighborhood when they chanced to come under his supervision. Second, according to *Moore*, a court must determine whether the probative value of the evidence is outweighed by the danger of unfair prejudice.

### PART III.

Tolman, however, further argues that even if the evidence shows the existence of a plan, it is still inadmissible because it is irrelevant. See I.R.E. 402 ("Evidence which is not relevant is not admissible.")

The question of relevancy of a common scheme or plan was also addressed in *Moore*. Beginning at 120 Idaho at 745, 819 P.2d at 1145, the majority opinion is seen as waxing philosophical, having been led in that direction by a law review article by a student author which was written fifteen years ago:

With regard to relevancy, the proffered testimony is relevant to the issue of credibility and corroboration of the victim's testimony. Although corroboration is no longer mandatorily required in all sex crime cases, corroborating evidence may still be relevant, particularly in sex crime cases involving minors. [citations omitted] Corroborative evidence in sex crime cases involving youthful victims is often times necessary to establishing the credibility of a young child. Too often the determination of the case rests strictly upon establishing that the victim's testimony is more credible than that of the alleged perpetrator. As was discussed in a UCLA law review article:

[A]dmission of corroborative evidence serves the dual purpose of reducing the probability that the prosecution witness is lying, while at the same time increasing the probability that the defendant committed the crime.

*Other Sex Offenses*, 25 UCLA L.Rev. 261, 286 (1977).

. . . .

In the instant case, the proposed testimony regarding acts of abuse previously inflicted by Moore upon other female children in the victim's household corroborates her testimony. Evidence of all the incidents of abuse, taken together, may provide an evidentiary plan or pattern that tends to make the alleged incidents more plausible and probable.

*Moore*, 120 Idaho at 745–46, 819 P.2d at 1145–46.

Thus, to the extent that any child's testimony corroborated the testimony of another child's testimony concerning the charged sexual misconduct, it was relevant under *Moore*. However, that does not end the inquiry because *Moore* does not allow a witness to corroborate his own testimony

by claiming more than one incident of abuse. In *Moore*, the proffered testimony corroborated the alleged victim's testimony because *it came from a third person who claimed to have been abused by the defendant under similar circumstances.* The fact that another person experienced similar abuse could have the effect of making an alleged victim's testimony more credible.

Here, unlike *Moore*, the court allowed the jury to consider the evidence of uncharged offenses as corroboration of the same child's testimony about the charged offense. However, the fact that a witness testifies that a defendant committed several acts of wrongdoing does not make that witness's testimony any more credible. The experiences of life instruct us that a person may be apt to tell several untruths as easily as he can tell one; repeated testimony does not make a mistake or untruth the more likely to be true. Thus, a more enlightened Court should this day rule that the trial court erred in allowing the various witnesses to self-corroborate their allegations. An appropriate enlightened decision is clearly required and would be consonant with *Moore*. In fact, the law review article utilized by the majority in *Moore*, had it only further perused the article, supports my conclusion:

> The determination of admissibility hinges on the source of the corroborative evidence: The complaining witness is precluded from self-corroboration; but evidence of the defendant's sexual misconduct, as attested by other victims, may properly corroborate the complaining witness's testimony.

Comment, *Other Sex Offenses*, 25 UCLA L.Rev. 261, 285–86 (1977). The California Court of Appeals has stated the rule thusly:

> [T]he rationale for admissibility of evidence of sexual misconduct with others, in cases where there is no issue as to identity, absence of accident, and so forth, is simply corroboration of the complaining witness. Where such corroboration comes from the mouth of another witness, we admit it. When it consists of

nothing but the complaining witness corroborating himself, we reject it.

*People v. Kazee*, 47 Cal.App.3d 593, 596, 121 Cal.Rptr. 221, 223 (2nd Dist.1975). Or put another way, "the trier of fact is not aided by evidence of other offenses where that evidence is limited to the uncorroborated testimony of the prosecution witness." *People v. Stanley*, 67 Cal.2d. 812, 817, 63 Cal.Rptr. 825, 828, 433 P.2d 913, 916 (1967). *See also State v. Simerly*, 463 S.W.2d 846 (Mo.1971) (evidence of prior incestuous acts with sister of complaining witness admissible to corroborate witness's testimony), *People v. Covert*, 249 Cal. App.2d 81, 57 Cal.Rptr. 220 (1967) (same as *Simerly*).

Because the trial court improperly allowed the other bad acts evidence to self-corroborate the testimony of the prosecution witnesses, we should reverse the conviction and remand for a new trial. Tolman's defense was that the children were not telling the truth and the credibility of the complaining witnesses was the central issue in the case. As the determination of a witness's credibility is best left to the trier of fact, I cannot conclude that the outcome would have been the same even if the children's testimony had not been improperly self-corroborated.

## PART IV.

Touching again on *State v. Moore*, having revisited it now some months later in regard to this *Tolman* prosecution, it should be said that in comparison, *Moore* was considerably the better-reasoned opinion. Today's majority opinion goes far, far afield from which this Court had to say in *Moore*. For instance, *Moore* made it very clear that:

> Generally, evidence of other criminal acts or offenses is inadmissible to prove the character of a person in order to show that he committed the crime for which he is on trial. I.R.E. 404(b); *State v. Martin*, 118 Idaho 334, 796 P.2d 1007 (1990); *State v. Needs*, 99 Idaho 883, 591 P.2d 130 (1979); *State v. Wrenn*, 99 Idaho 506, 584 P.2d 1231 (1978). However, such acts may be 'admissible for other

purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.' I.R.E. 404(b); *see also State v. Paradis,* 106 Idaho 117, 676 P.2d 31 (1984); *State v. Wrenn,* 99 Idaho 506, 584 P.2d 1231 (1978); *State v. Hatton,* 95 Idaho 856, 522 P.2d 64 (1974); *State v. Shepherd,* 94 Idaho 227, 486 P.2d 82 (1971); *State v. Kombol,* 81 Idaho 530, 347 P.2d 117 (1959).

*Moore,* 120 Idaho at 745, 819 P.2d at 1145. Mentioned earlier in the *Moore* opinion is the statement that:

> The State sought to introduce evidence that Moore had allegedly engage in uncharged sexual misconduct with his stepdaughter during the period from 1977 to 1981, when she was between five and nine years of age. The State also proffered evidence that Moore had allegedly engage in similar misconduct with his daughter during the period from 1969 to 1973, when she was between the ages of nine and thirteen. The district court denied Moore's motion in limine on the basis that the evidence showed a common scheme or plan, was probative of Moore's motives or lustful disposition toward children, and was indicative of specific intent.

*Moore,* 120 Idaho at 744, 819 P.2d at 1144. The trial court denied Moore's motion in limine aimed at precluding such testimony. This Court's opinion then set out the two-tiered analysis which must be made, relevant to the crime charged, and the probative value weighed against the danger of unfair prejudice to the defendant.

At that point my interest in *Moore* was on the wane, simply because of an inability to understand from what logical source flows this authorization allowing the State to put into evidence conduct, assertedly bad, which had never brought the perpetrator to court to stand trial, yet allowing the jury to deduce therefrom that the defendant being then and there on trial was guilty on the charge that had been laid against him. A majority of this court, not including Justice Johnson or myself, went so far as to say in the *Martin* [8] prosecution that the prior uncharged offenses which had occurred ten and twelve years earlier did not make evidence of prior wrongful conduct "unfairly prejudicial because of remoteness." Topping that, the majority went on to bolster that pure *ipse dixit* by adding that during that ten or twelve year expanse of time, *the defendant had been incarcerated nearly the entire period,* intimating that had he not been locked up, his sex crime career would not have been interrupted.

The *Hammock* [9] criminal prosecution, utilized by the majority in *Moore,* without question held as portrayed, but it does not necessarily follow that it applies here, although the majority would leave that impression. Beyond refute, the State did not in that case introduce any evidence of uncharged sexual conduct by Hammock. It had prepared no case against him based on such an hypothesis. The charge, plain and simple, was that the prosecutrix was under the age of consent, "[t]he fact that this girl, under the age of consent, had had intercourse with other men, or even if she had become a common prostitute, would constitute no defense for the defendant." *Hammock,* 18 Idaho at 426, 110 P. at 169. Justice Ailshie wrote the opinion, Justice Sullivan concurred, and now, eighty-two years later, Justice Bistline voices his concurrence.

All of which brings me to wonder if our system of justice may be on the verge of crumbling because of such decisions as those mentioned, other than *Hammock,* if the Court persists in authorizing the prosecution and the district courts to find successful a state's case against a defendant by the use (or overuse) of uncharged crimes, uncharged misconduct, common criminal plan or scheme, common criminal

---

8. *State v. Martin,* 118 Idaho 334, 796 P.2d 1007 (1990).

9. *State v. Hammock,* 18 Idaho 424, 110 P. 169 (1910). The charge on which Hammock was prosecuted was statutory rape. The defense was shot down in its effort to obtain an answer from the prosecutrix as to whether she had ever had sex with anyone prior to submitting to the defendant.

design, evidence of similar acts, or an evidentiary plan or pattern.

JOHNSON, J., concurs in PARTS I, II, and III.