75 P.3d 1202

William **LEVINGER**, M.D.,
Plaintiff–Appellant,

v.

**MERCY MEDICAL CENTER, NAMPA**,
Defendant–Respondent,

and

Coastal Emergency Medical Group, Inc., dba Coastal Physician, Services of the West, Inc., dba Anesthesia Partners, Inc.; Robert Fale and John Does I—X, whose true Identities are presently unknown, Defendants.

No. 27591.

Supreme Court of Idaho,
Boise, January 2003, Term.

July 24, 2003.

Rehearing Denied July 24, 2003.

**194**

Seiniger Law Offices, Boise, for appellant. W. Breck Seiniger Jr. argued.

Givens Pursley, LLP, Boise, for respondent. Robert B. White argued.

## SUBSTITUTE OPINION

### THE COURT'S PRIOR OPINION DATED APRIL 16, 2003, IS HEREBY WITHDRAWN.

TROUT, Chief Justice.

This case is before this Court on William Levinger, M.D.'s (Levinger) appeal following a jury verdict in favor of Mercy Medical Center, Nampa (Mercy). In the proceedings below, Levinger claimed Mercy tortiously interfered with his prospective business advantage, violated the Rehabilitation Act of 1973 (Rehabilitation Act), and violated the Americans with Disabilities Act (ADA).

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Levinger is a board certified anesthesiologist. Coastal Physicians Services of the West, Inc. ("Coastal") is a corporation engaged in providing licensed physicians to staff medical care facilities. Mercy is a general acute care hospital located in Nampa, Idaho. Coastal had an exclusive contract with Mercy to provide anesthesiology services. Levinger had an independent contractor agreement with Coastal. Levinger provided anesthesiology services and had medical staff privileges at Mercy pursuant to the Mercy–Coastal contract.

In April 1996, Levinger's erratic behavior set in motion a chain of events that led to the termination of his contract with Coastal and revocation of medical staff privileges at Mer-

cy. In early April, Levinger announced his candidacy and began campaigning for Congress. After taking several days off from his job at Mercy, Levinger telephoned his supervisor to say that he was not presently safe to practice medicine and would not be coming to work on his next scheduled day. As a result of increasingly poor work performance and concerns about his mental health, an intervention group then met at Levinger's home to insist that Levinger seek voluntary treatment for what was apparently a psychological disorder. That same day, Mercy suspended Levinger's privileges on a precautionary basis, pursuant to Mercy's Medical Staff By-laws. The following day, Levinger went to a television news studio for an interview about his campaign. When Levinger refused to leave the television station, studio personnel called police and Levinger was arrested in a partially disrobed condition. Levinger was then involuntarily committed to a psychiatric ward, where he remained until May 11, 1996. Levinger's behavior during this time was diagnosed as an acute manifestation of bipolar illness known as hypomania.

Coastal terminated its employment agreement with Levinger on May 6, 1996. The Levinger–Coastal agreement provided that Coastal had the right to immediately terminate the contract without advance notice if Levinger was denied medical staff privileges or if Levinger's license to practice medicine was suspended or revoked. In addition to having his staff privileges suspended by Mercy on April 16, Levinger's license to practice medicine was suspended by the Idaho State Board of Medicine on May 3, 1996. As a result of Coastal's termination of its contract with Levinger, Mercy terminated Levinger's clinical privileges on May 30, as required by the Mercy–Coastal and Levinger–Coastal agreements. Levinger's license to practice medicine was restored on October 30, 1996, but he has not worked as an anesthesiologist at Mercy since.[1]

Levinger filed a complaint against Mercy on May 14, 1998, which he later amended. Levinger claimed Mercy tortiously interfered

---

1. The Mercy–Coastal agreement terminated on March 31, 1997. Medical Anesthesia Consultants ("MAC") succeeded Coastal as the exclusive

provider of anesthesia services. Levinger inquired about joining MAC, but he was told there was no opening for another physician.

with his prospective business advantage by undermining his ability to obtain employment with the exclusive providers of anesthesia services at Mercy. Levinger also alleged Mercy violated the Rehabilitation Act and the ADA by discriminating against him based on his bipolar condition. Mercy moved for summary judgment on all of Levinger's claims. The district court denied the motion on Levinger's claim that Mercy tortiously interfered with his prospective business advantage and allowed the issue to proceed to trial. The district court also granted in part and denied in part Mercy's motion for summary judgment under the Rehabilitation Act and the ADA.

With regard to the Rehabilitation Act and ADA claims, the district court first ruled as a matter of law that Levinger did not have a disability. Second, the district court ruled that there was a question of fact as to whether Levinger was regarded by Mercy as having a disability. Therefore, Levinger was able to proceed to trial on the theory that Mercy had discriminated against him because it regarded him as having a disability. Third, the district court ruled Levinger was not an "otherwise qualified individual" or a "qualified individual with a disability" under the Rehabilitation Act or the ADA at any time after April 1996. Consequently, Levinger was precluded from bringing an employment discrimination claim under the Rehabilitation Act or Title I of the ADA. And finally, the district court denied Mercy's motion under the Rehabilitation Act and the ADA as to whether it discriminated against Levinger by denying him access to its facility, hospital privileges, and the benefits of services, programs, and activities at Mercy.

The case then went to jury trial on the remaining issues of whether Mercy tortiously interfered with Levinger's prospective business advantage, and whether Mercy violated the Rehabilitation Act and ADA by regarding Levinger as being disabled and denying him hospital privileges, access to its facility, and the benefits of services, programs, and activities at Mercy. After the jury returned its verdict in favor of Mercy, Levinger moved for a new trial based on juror misconduct and irregularity in the proceedings. Levinger provided the affidavit of one of the jurors who claimed that another juror had made statements during the trial evidencing bias against Levinger. The district court denied Levinger's motion for new trial by ruling that Levinger's evidence regarding juror misconduct was inadmissible under Idaho Rule of Evidence 606(b). In addition, the district court ruled the alleged irregularity in the proceedings—the district court's June 20, 2000, ruling on Mercy's motion for summary judgment—was not appropriately raised by Levinger in the post-trial motions and was otherwise harmless error. This timely appeal followed.

## II.

### STANDARD OF REVIEW

When considering a ruling on motion for summary judgment, this Court's standard of review is the same as that used by the trial court in ruling on the motion. *Barnes v. Barnes,* 135 Idaho 103, 105, 15 P.3d 816, 818 (2000). The Court must liberally construe the facts in favor of the non-moving party and determine whether there is a genuine issue as to any material fact, and whether the moving party is entitled to judgment as a matter of law. I.R.C.P. 56(c). In making this determination, all allegations of fact in the record, and all reasonable inferences from the record are construed in the light most favorable to the party opposing the motion. *Thomson v. City of Lewiston,* 137 Idaho 473, 476, 50 P.3d 488, 491 (2002). The burden of proving the absence of material facts is upon the moving party. *Id.* Once the moving party establishes the absence of a genuine issue, the burden shifts to the non-moving party to show that a genuine issue of material fact on the challenged element of the claim does exist. The nonmoving party may not rest upon the mere allegations or denials contained in the pleadings, but must come forward and produce evidence by affidavits or as otherwise provided in the rules to set forth specific facts showing that there is a genuine issue for trial. I.R.C.P. 56(e). Failure to do so will result in an order granting summary judgment.

■ When reviewing a decision on a new trial based on juror misconduct, this Court applies an abuse of discretion standard. *Hughes v. State,* 129 Idaho 558, 561, 929 P.2d 120, 123 (1996). While we must review the evidence, we are not in a position to weigh the evidence as the trial court does. The trial court's determination not to grant a new trial will not be overturned absent manifest abuse of discretion. *Jones v. Panhandle Distribs., Inc.,* 117 Idaho 750, 755, 792 P.2d 315, 320 (1990). The primary focus on review is the process by which the district court reached its decision, not the result of the district court's decision. *Hughes,* 129 Idaho at 561, 929 P.2d at 123. Thus, the sequence of our inquiry is:

(1) whether the district court correctly perceived the issue as one of discretion; (2) whether the district court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the district court reached its decision by an exercise of reason.

*Sun Valley Shopping Center v. Idaho Power,* 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

### III.

### DISCUSSION

■ Levinger seeks a new trial based on juror misconduct. When a motion for a new trial is made because of juror misconduct, the district court must determine whether there has been "a showing that prejudice reasonably could have occurred." *Leavitt v. Swain,* 133 Idaho 624, 629, 991 P.2d 349, 354 (1999) (citation omitted). Before reaching that question, however, the party seeking a new trial must demonstrate that juror misconduct occurred. Levinger has not sufficiently raised the issue of whether juror misconduct occurred.

Levinger challenges the dismissal of his ADA and Rehabilitation Act employment discrimination action on summary judgment. The Rehabilitation Act and the ADA prohibit certain employers from discriminating against individuals on the basis of their disabilities. Levinger cannot, however, proceed with his employment discrimination claims

against Mercy since he is an independent contractor.

### A. Levinger is not entitled to a new trial based on juror misconduct.

Levinger contends the district court erred in denying a new trial due to juror misconduct. Levinger supported his claim of juror misconduct by filing an affidavit from one of the jurors which stated that after jury selection, but prior to the presentation of evidence, another juror said to her: "We are just going to fry this guy and roll him out of here" (or words to that effect). The remainder of the juror's affidavit made reference to the jury's deliberations and what took place during the deliberative process. Levinger argues that the comment referred to him and, as a result, denied his right to a fair trial by impartial jurors. The district court denied Levinger's motion, ruling the evidence regarding juror misconduct was inadmissible under Idaho Rule of Evidence 606(b). The district court further found that Levinger had failed to raise any issues about dishonesty during voir dire questioning, which might implicate the analysis set out in *McDonough Power Equipment, Inc. v. Greenwood,* 464 U.S. 548, 556, 104 S.Ct. 845, 850, 78 L.Ed.2d 663, 671 (1984), adopted by this Court in *State v. Tolman,* 121 Idaho 899, 902, 828 P.2d 1304, 1307 (1992).

■ A new trial may be granted due to misconduct of a jury. I.R.C.P. 59(a)(2). Before reaching the question of whether there was juror misconduct, a court must first consider whether there is admissible evidence supporting such a claim. Under Rule 606(b), there are certain matters a juror may not testify about when there is a challenge to the validity of a verdict. A juror may not testify about:

[A]ny matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that juror's or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict ... or concerning the juror's mental processes in connection therewith, nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror

would be precluded from testifying be received for [the purpose of inquiring into the validity of a verdict].

I.R.E. 606(b). In addition to specifying which matters jurors are prohibited from testifying about, the Idaho Rules of Evidence expressly describe the only matters jurors may testify to: "[A] juror may testify on the questions whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror and ... whether or not the jury determined any issue by resort to chance." *Id.*

 The role of I.R.E. 606(b) is to guide a court in determining what evidence may be considered by the court to impeach a verdict. That rule, however, does not have application to information brought forth which challenges other conduct of jurors during the trial, apart from their deliberations. An affidavit alleging information which calls into question a juror's responses to questions during voir dire does not fall within the limitations of I.R.E 606(b). *See, e.g., U.S. v. Henley,* 238 F.3d 1111, 1121 (9th Cir.2001) ("Where ... a juror has been asked direct questions about racial bias during voir dire, and has sworn that racial bias would play no part in his deliberations, evidence of that juror's alleged [racially biased remarks to other jurors] is indisputably admissible for the purpose of determining whether the juror's responses were truthful.").

 This conclusion is consistent with the United States Supreme Court's decision in *McDonough Power Equipment, Inc. v. Greenwood,* 464 U.S. 548, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984), where a test was estab-

lished for determining when a new trial is required due to juror dishonesty during voir dire. *Id.* at 556, 104 S.Ct. at 850, 78 L.Ed.2d at 671. We previously adopted the *McDonough Power* test; however, no analysis was provided of the interplay between the test for a new trial due to juror dishonesty during voir dire and I.R.E. 606(b).[2] Today we make clear that I.R.E. 606(b) does not bar the introduction of juror affidavits revealing dishonesty during voir dire.[3]

 The district court in this case found, however, that Levinger did not raise the issue beyond challenging juror deliberations and did not allege dishonesty of a juror during voir dire, which would trigger the *McDonough Power* test. We have articulated the particularity that a trial court should require of the party seeking relief pursuant to a motion for new trial:

> Trial judges should not be required to attempt to guess at the applicable rule governing each charge of error claimed by the moving party. It is incumbent upon counsel to set out the legal basis for each motion, set forth the basis in the record upon which the motion rests, and specify the applicable Rule of Civil Procedure.

*O'Dell v. Basabe,* 119 Idaho 796, 809, 810 P.2d 1082, 1095 (1991). Levinger moved for a new trial based on misconduct of the jury under I.R.C.P. 59(a)(2); however, he did not state with particularity the legal basis for the motion—he did not cite to the *McDonough Power* test adopted by this Court; nor did he set forth the basis in the record upon which he was making his motion. He did not point to a material question that the juror failed to answer honestly on voir dire, or show that a correct answer to that question would have

---

2. In *State v. Tolman,* 121 Idaho 899, 828 P.2d 1304 (1992), we adopted the *McDonough Power* test for determining when a new trial is warranted due to a juror's dishonesty during voir dire. *Id.* at 902, 828 P.2d at 1307. To obtain a new trial when a juror has failed to disclose bias during questioning at voir dire, "a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause." *Id.* (quoting *McDonough Power Equipment v. Greenwood,* 464 U.S. 548, 555–56, 104 S.Ct. 845, 849–850, 78 L.Ed.2d 663, 670–671

(1984)). The Court of Appeals has held that the proof of dishonesty must be by clear and convincing evidence. *See State v. Reutzel,* 130 Idaho 88, 936 P.2d 1330 (Ct.App.1997).

3. However, we are not unmindful of the policy goals underlying I.R.E. 606(b), namely, to promote finality, protect jurors from post-trial inquiry or harassment, and to avoid the practical concern that an affidavit by a juror to impeach the verdict is potentially unreliable. *See Watson v. Navistar Corp.,* 121 Idaho 643, 657, 827 P.2d 656, 670 (1992).

provided a basis for a challenge for cause. Levinger's briefing acknowledges that he did not bring to the district court's attention his allegation that a juror lied during voir dire. Instead, Levinger's attorney claims that allegation was implicit in his post-trial oral argument. That is not sufficient to put either the district court or opposing counsel on notice of the actual basis for the motion for new trial.[4] For that reason, we find the district court properly addressed the issues raised by the motion and did not err in denying it.

### B. The district court correctly granted summary judgment on Levinger's employment discrimination claims.

Levinger next raises the issue of whether the district court erred in granting summary judgment on Levinger's employment discrimination claims. Specifically, the district court granted summary judgment to Mercy on two grounds that Levinger now appeals. First, the district court found that Levinger is not "disabled" under the Rehabilitation Act or the ADA. And second, the district court found that Levinger was not a "qualified individual with a disability." As for Levinger's claims that Mercy engaged in discriminatory conduct because it regarded him as having a disability, and that Mercy denied him access to its services, the district court allowed those claims to proceed to jury trial. We affirm the district court's grant of summary judgment in favor of Mercy; however, we do so on a different basis. Further, we uphold the jury verdict since we have not been presented with a record to review on appeal.

■ Levinger blends the Rehabilitation Act and ADA employment discrimination claims together. Nevertheless, the standards found in Title I of the ADA are used to determine whether there has been actionable employment discrimination under either act. *See* 29 U.S.C. § 794(d) (1988) (stating Title I ADA standards apply to employment dis-

crimination under Rehabilitation Act). To bring a Title I ADA employment discrimination claim, the plaintiff must be an "employee." 42 U.S.C. §§ 12112(a), 12111(4). The district court did not discuss this baseline requirement, but the employment discrimination provisions under Title I of the ADA do not protect independent contractors. *See PGA Tour, Inc. v. Martin,* 532 U.S. 661, 692, 121 S.Ct. 1879, 1898, 149 L.Ed.2d 904, 929 (2001). It is undisputed that Levinger had an independent contractor arrangement with Coastal and provided services at Mercy via the Mercy–Coastal agreement. Consequently, Levinger does not have any employment discrimination rights under the ADA or the Rehabilitation Act.

■ Levinger's status as an independent contractor does not preclude Rehabilitation Act/Title III ADA claims for other than employment discrimination, and such claims were tried before a jury properly resolved by the district court. The district court found that Levinger was not disabled and not a "qualified individual with a disability." The district court may have erred in finding that Levinger was not disabled, because previous case law has established that Levinger's diagnosed condition of bipolar disorder is recognized as causing a disability protected by the Rehabilitation Act and the ADA. *See, e.g., Bergsrud v. Columbia–Lea Reg'l Med. Ctr.,* 2000 WL 33287447 (D.N.M.2000); *see also Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 482–83, 119 S.Ct. 2139, 2146–47, 144 L.Ed.2d 450, 462–63 (1999) (holding disability determination is made at time of alleged discrimination, not later when remedial measures are used to correct disability). However, the district court correctly concluded Levinger was not a "qualified individual with a disability." *See* 42 U.S.C. § 12111(8) (defining "qualified individual"). When Levinger's medical privileges and medical license were suspended, he was no longer capable of performing the essential functions of his job.[5]

---

**4.** Had such notice been given, opposing counsel and/or the trial court may have taken steps to present further evidence or require an evidentiary hearing, which did not take place in this case.

**5.** Mercy had no control over these actions, as Levinger stipulated that suspension of his medi-

cal privileges was appropriate since he was not able to practice medicine at the time of his bipolar condition. Moreover, the Idaho State Board of Medicine, and not Mercy, suspended Levinger's license to practice medicine.

Thus, we affirm the district court's grant of summary judgment against Levinger because he was not a "qualified individual."

The district court properly submitted the remaining issues to the jury. Specifically, those other issues dealt with whether Mercy violated the Rehabilitation Act and ADA by regarding Levinger as being disabled and denying him hospital privileges, access to its facility, and the benefits of services, programs, and activities at Mercy. Levinger has not raised an issue with regard to the jury's resolution of the issues before it; thus, we assume that the jury correctly decided the issues before it since we have no record of the trial transcripts to review. *See Student Loan Fund of Idaho, Inc. v. Duerner,* 131 Idaho 45, 54, 951 P.2d 1272, 1281 (1997) ("This Court does not assume error on appeal; rather, the party assigning error must affirmatively show it.").

## C. No fees are awarded to either party.

Because genuine issues have been raised, this is not a frivolous appeal warranting an award of fees.

## IV.

## CONCLUSION

We hold that the district court correctly denied Levinger's request for a new trial. In so holding, we announce that the exclusionary effect of I.R.E. 606(b) does not apply to the admissibility of juror affidavits used to prove dishonesty in voir dire. We also affirm the district court's grant of summary judgment against Levinger's employment discrimination claims, because Levinger's status as an independent contractor precludes granting relief for employment discrimination based on Title I of the ADA and the Rehabilitation Act. Costs to defendant-respondent.

Justices SCHROEDER, KIDWELL, EISMANN and Justice Pro Tem SCHWARTZMAN concur.