## IN THE COURT OF APPEALS OF THE STATE OF IDAHO
### Docket No. 51695

| | |
|---|---|
| REBECCA MANN, | ) |
| | ) Filed: June 4, 2025 |
| Plaintiff-Appellant, | ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) |
| NORTH CANYON MEDICAL | ) |
| CENTER, INC., dba NORTH CANYON | ) |
| MEDICAL CENTER, | ) |
| | ) |
| Defendant-Respondent, | ) |
| | ) |
| and | ) |
| | ) |
| REID WAYNE LOFGRAN, DO, as the | ) |
| Supervising Physician for Jason Davis, | ) |
| PA; and JASON DAVIS, PA, as an | ) |
| employee or agent of NCMC, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Gooding County. Hon. Rosemary Emory, District Judge.

Judgment of the district court, affirmed.

Clark & Associates, Attorneys; Eric R. Clark, Eagle, for appellant. Eric R. Clark argued.

Brassey Crawford, PLLC; Andrew C. Brassey, Boise, for respondent. Andrew C. Brassey argued.

_____

GRATTON, Chief Judge

Rebecca Mann appeals from the jury's verdict in favor of North Canyon Medical Center, finding that physician assistant, Jason Davis, did not breach the standard of care in evaluating Harve Mann's symptoms and coordinating transfer of care to a Boise neurosurgeon when imaging showed an unruptured brain aneurysm. We affirm.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 9, 2019, Harve Mann (Harve) arrived at North Canyon Medical Center (NCMC) complaining of dizziness, headache, and a recent history of vomiting. A certified physician assistant, Jason Davis (Davis), obtained a patient history and performed a physical examination of Harve. Davis noted that Harve had elevated blood pressure but knew that Harve was taking medication for chronic hypertension. Davis was also aware that Harve had suffered from a stroke approximately ten years earlier, leaving Harve with residual deficits. Eventually, Harve was given a CT scan. While the results of the scan were pending, it was recommended Harve wait at home as his symptoms had improved during his visit and were consistent with a sinus infection.

The CT scan results ultimately showed that Harve had a fusiform basilar artery aneurysm. Upon receiving the CT scan results, Davis immediately contacted Harve, advised him of the findings, and directed him to see a neurologist/neurosurgeon. Davis also contacted a neurosurgeon in Boise, as no neurosurgeons, at that time, practiced in Gooding, Idaho. The neurosurgeon's office contacted Harve on the morning of September 10, 2019, and scheduled him for an appointment on Thursday, September 12, 2019. However, Harve passed away on September 10, 2019, after his aneurysm ruptured.

Rebecca Mann (Mann) filed a complaint and demand for jury trial, alleging claims of medical negligence and the wrongful death of her husband. In preparation for the trial, each side disclosed several expert witnesses. The case proceeded to trial. Mann asserted that Davis should have immediately sent Harve to the emergency department from where he could have been transferred to a higher level of care and that, had he done so, Harve would have survived when his aneurysm ruptured the following day.

Two days prior to NCMC presenting its case-in-chief, Mann moved to exclude two of NCMC's expert witnesses. Mann argued the expert disclosures were insufficient because they did not list medical journals on which the experts relied, and that the two experts' testimony would be duplicative. The district court allowed the two experts to testify.

The jury returned a verdict in favor of NCMC, finding that Davis had not breached the applicable standard of care. Mann moved for a new trial, claiming that the jury had been

improperly instructed and there had been juror misconduct. The district court denied the motion for new trial. Mann appeals.

## II.

## STANDARD OF REVIEW

On appeal, we review a trial court's decision to grant or deny a new trial for an abuse of discretion, and we will not disturb that decision absent a manifest abuse of this discretion. *Lanham v. Idaho Power Co.*, 130 Idaho 486, 497-98, 943 P.2d 912, 923-24 (1997); *Burggraf v. Chaffin*, 121 Idaho 171, 173, 823 P.2d 775, 777 (1991).

The question of whether the jury has been properly instructed is a question of law over which we exercise free review. *Needs v. Hebener*, 118 Idaho 438, 441, 797 P.2d 146, 149 (Ct. App. 1990). When reviewing jury instructions, we ask whether the instructions as a whole, and not individually, fairly and accurately reflect applicable law. *Powell v. Sellers*, 130 Idaho 122, 126, 937 P.2d 434, 438 (Ct. App. 1997).

The trial court has broad discretion in determining the admissibility of testimonial evidence. A decision to admit or deny such evidence will not be disturbed on appeal absent a clear showing of abuse of that discretion. *Mac Tools, Inc. v. Griffin*, 126 Idaho 193, 199, 879 P.2d 1126, 1132 (1994).

When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

## III.

## ANALYSIS

Mann claims that the district court erred in denying her motion for new trial. Specifically, Mann argues that the district court gave erroneous and contradictory jury instructions on standard of care and causation and there was juror misconduct warranting a new trial. In addition, Mann asserts evidentiary errors in the district court's refusal to admit an internal NCMC document and in allowing testimony from NCMC's experts. Both parties argue they are entitled to attorney's fees.

3

**A.     New Trial**

Idaho Rule of Civil Procedure 59(a)(1)(A) provides that a new trial is warranted when there is an "irregularity in the proceedings of the court, jury, or adverse party." When considering an alleged irregularity and whether it merits a new trial, the court takes into consideration whether the irregularity had any effect on the jury's decision. *Gillingham Const., Inc. v. Newby-Wiggins Const., Inc.*, 142 Idaho 15, 23, 121 P.3d 946, 954 (2005).

**1.     Jury instructions**

Mann argues that the district court erred by including jury instruction no. 29 in the instructions given to the jury. Mann asserts that the instruction is contrary to the law, confusing, misleading, and prejudicial, warranting a new trial. Jury instruction no. 29 reads:

INSTRUCTION NO. 29
The mere fact that an unfortunate result occurs following medical care rendered by a physician does not, by itself, establish a breach of the standard of care by the physician.

Mann's overarching argument is that instruction no. 29 is a causation instruction under the guise of a standard of care instruction. Citing *Newberry v. Martens*, 142 Idaho 284, 127 P.3d 187 (2005), Mann asserts that the "unfortunate result" language is inappropriate in reference to causation in a medical malpractice case. Mann acknowledges that the district court gave the proper substantial factor causation instruction[1] and a proper standard of care instruction but contends the unfortunate result instruction was inappropriate. NCMC argues that instruction no. 29 is, by its terms, a standard of care instruction, not a causation instruction, and a correct statement of the law. NCMC relies on *Clark v. Klein*, 137 Idaho 154, 159, 45 P.3d 810, 815 (2002) and *Coombs v. Curnow*, 148 Idaho 129, 140, 219 P.3d 453, 464 (2009).

In *Newberry*, the Supreme Court held that, in multi-cause medical malpractice cases, the substantial factor proximate cause instruction is required. *Newberry*, 142 Idaho at 288, 127 P.3d at 191. The "but for" test, which asks whether the complained of injury would have occurred "but for" the defendant's alleged negligence, may be appropriate in a single cause medical malpractice case but not in a multi-cause case. *Id.* Mann contends that this is a multi-cause case, and the

---

[1]     Instruction no. 27 reads:
The expression "proximate cause," means a cause that, in natural or probable sequence, produced the injury, the loss or the damage complained of. It need not be the only cause. It is sufficient if it is a substantial factor in bringing about the injury, loss or damage.

unfortunate result language used in instruction no. 29 is merely a restatement of the "but for" language. Mann argues that "Instruction 29 can be restated as 'It is not a proximate cause if the unfortunate result likely would have occurred anyway.'" Mann's rephrasing of the instruction ignores the plain language of the instruction. Nothing about the instruction itself refers to causation. NCMC proposed a causation instruction that contained the unfortunate result language, and the district court appropriately refused to give the instruction. While the unfortunate result language may not be appropriate in a causation instruction, *Newberry* does not stand for the proposition that it is inappropriate in a standard of care instruction.

In *Clark*, the Supreme Court found no error in the district court's instruction on standard of care, stating:

> In the present case, Appellants objected to Instruction No. 18 because it states that "[t]he mere fact that an undesirable or unfortunate result occurs following medical care rendered by the Defendant does not, of itself, establish a breach of the standard of care." Although in *Jerome Thriftway Drug, Inc. v. Winslow*, 110 Idaho 615, 717 P.2d 1033 (1986), we found the trial court did not abuse its discretion in giving a jury instruction that provided "the mere occurrence of a fire does not raise a presumption nor an inference of negligence," IDJI 217 specifically provides that an instruction should not be given that states "negligence may not be presumed from the fact of an accident alone."

*Clark*, 137 Idaho at 159, 45 P.3d at 815. The district court relied on the above language in overruling Mann's objection. In *Coombs*, the Court noted:

> In addition to proving a provider failed to use ordinary care, the plaintiff must demonstrate that the provider's failure to use ordinary care was the proximate cause of damage to the plaintiff. The mere fact that [a procedure does] not result in a favorable outcome does not establish--or even constitute evidence of-- negligence or proximate causation.

*Coombs*, 148 Idaho at 139, 219 P.3d at 463 (internal citations and quotations omitted). Mann argues that the unfortunate result negligence language that both *Clark* and *Coombs* addressed is actually unfortunate result causation language. Mann's attempt to limit or explain away *Clark* and *Coombs* is unavailing. Instruction no. 29 advises the jury that they may not infer breach of the standard of care from the mere fact of an unfortunate result. It instructs the jury against an unwarranted and unproven inference of culpable conduct (negligence), not causation. Instruction

5

no. 29 is neither a causation instruction nor an incorrect statement of the law relative to the standard of care.[2]

Mann also argues that instruction no. 29 is confusing, misleading, and prejudicial.

> The standard of review for issues concerning jury instructions is limited to a determination of whether the instructions, as a whole, fairly and adequately present the issues and state the law. When the instructions, taken as a whole, do not mislead or prejudice a party, an erroneous instruction does not constitute reversible error." Instructions that correctly state the law may still be reversed on appeal if they are "so confusing and argumentative as to mislead the jury.

*Secol v. Fall River Med., P.L.L.C.*, 168 Idaho 339, 355, 483 P.3d 396, 412 (2021) (internal citations omitted). Mann contends that the unfortunate result refers to causation and thus is confusing by being coupled with the standard of care language. Mann again argues that, although instruction no. 29 refers to the standard of care, it is a causation instruction. We have rejected this argument above. Mann claims that the confusion caused by instruction no. 29 could have prejudiced her. However, the jury only returned a verdict on the breach of the standard of care question and did not reach the issue of causation. Given that the jury did not reach the causation issue, there is no evidence that the jury did or could have considered instruction no. 29 as a causation instruction, in reaching its determination that Davis did not breach the standard of care. This Court has held the appellant has the burden to clearly show prejudicial error from an erroneous jury instruction. *Clark*, 137 Idaho at 159, 45 P.3d at 815. The district court did not err in giving instruction no. 29. Thus, there is no reversible error.

### 2. Juror misconduct

#### a. Juror No. 3

Mann argues she was denied a fair trial by juror misconduct and the district court erred in denying her motion for new trial. Mann asserts that, during voir dire, juror no. 3 did not answer truthfully about knowing Mann. Further, Mann argues that juror no. 3 made various statements

---

[2] Mann also argues that instruction no. 29 is not an approved Idaho Civil Jury Instruction. However, in *Newberry*, the Supreme Court noted that "the instructions at issue were not identical to the standard pattern jury instructions, but a court may diverge from those instructions if a 'different instruction would more adequately, accurately or clearly state the law.' I.R.C.P. 51(a)(2)." *Newberry v. Martens*, 142 Idaho 284, 287, 127 P.3d 187, 190 (2005).

during jury deliberations, including that Mann had just purchased a new pickup, so she did not need the money, which amount to misconduct.[3]

Idaho Rule of Civil Procedure 59(a)(1)(C) provides that a new trial is warranted where there is proven juror misconduct. When a motion for a new trial is made because of juror misconduct, the district court must determine whether there has been a showing of prejudice. *Levinger v. Mercy Med. Ctr., Nampa*, 139 Idaho 192, 196, 75 P.3d 1202, 1206 (2003); *Leavitt v. Swain*, 133 Idaho 624, 629, 991 P.2d 349, 354 (1999). Before reaching that question, however, the party seeking a new trial must demonstrate that juror misconduct occurred. *McCandless v. Pease*, 166 Idaho 865, 873, 465 P.3d 1104, 1112 (2020).

The test to determine when a new trial is required due to juror dishonesty during voir dire is the *McDonough Power* test. *McDonough Power Equipment Inc. v. Greenwood*, 464 U.S. 548 (1984). Under that test, the party asserting misconduct must not only demonstrate that a juror failed to honestly answer a material question during voir dire, but also that a correct response would have provided a valid basis for a challenge for cause. *State v. Tolman*, 121 Idaho 899, 902, 828 P.2d 1304, 1307 (1991).

As an initial matter, in the argument section of Mann's opening brief on appeal, Mann fails to address the district court's findings and conclusions as to juror no. 3. In fact, Mann fails to even mention the district court's findings and conclusions. A general challenge to the trial court's findings and conclusions, without specific reference to evidentiary or legal errors, is insufficient to preserve an issue. *Estate of Ekic v. Geico Indem. Co*., 163 Idaho 895, 898, 422 P.3d 1101, 1104 (2018). Further, Mann does not mention the *McDonough Power* test in her opening brief. Inasmuch, Mann fails to address or demonstrate that the second part of the *McDonough Power* test regarding a valid challenge for cause has been shown.[4] Mann cites to the *McDonough Power* test

---

[3] The other statements include that P.A. Davis was juror no. 3's brother's provider; juror no. 3 was impressed by the number of doctors NCMC had testify and that NCMC had more doctors testify than Mann; and juror no. 3 commented that NCMC had more attorneys than Mann. Mann presents no cogent argument that these statements, individually or collectively, amount to juror misconduct. A party waives an issue on appeal if either argument or authority is lacking. *Powell v. Sellers*, 130 Idaho 122, 128, 937 P.2d 434, 440 (Ct. App. 1997).

[4] Mann states in conclusion: "Accordingly, by failing to answer Judge Emory's question, juror no. 3 denied Becky the opportunity to scrutinize juror no. 3 for a peremptory or for-cause challenge, due to his obvious albeit undisclosed bias." This passing reference to a for cause challenge is insufficient to establish any legal basis upon which a for cause challenge could have

in her reply brief but still fails to present any cogent argument as to its application in this case or in reference to the district court's findings and conclusions. A party waives an issue on appeal if either argument or authority is lacking. *Powell*, 130 Idaho at 128, 937 P.2d at 440. This Court will not consider arguments raised for the first time in an appellant's reply brief. *Myers v. Workmen's Auto Ins. Co.*, 140 Idaho 495, 508, 95 P.3d 977, 990 (2004). Mann's argument is waived. Nonetheless, we will address the issue.

Mann asserts that, during voir dire, juror no. 3 did not answer truthfully about knowing Mann. The district court asked whether anyone knew Mann. Juror no. 3 did not respond to the court's question. Mann bases her argument on a declaration from the jury foreperson stating that, "I also believe that during *voir dire*, Juror No. 3 did not disclose that he knew Becky or Harve (Manns), but he stated that he did know them in the jury room." Mann claims that juror no. 3 did not raise his card during voir dire indicating that he knew the Manns because he did not want to be questioned about knowing them. Mann believes that the only plausible explanation was that juror no. 3 concluded that acknowledging he knew Mann would disqualify him from jury service, and he did not want to risk that by raising his hand.

In response to Mann's motion for new trial, juror no. 3 provided a declaration attesting why he did not raise his card when asked if he knew the Manns:

> I did not raise my card when asked about knowing Mrs. Mann because my answer to the Judge's questions about whether me knowing her would cause me to favor one side or the other or keep me from being impartial in the case would have been "no"--just the same as it was for other jurors who raised their card and said they knew Mrs. Mann. I was not trying to conceal anything. I just figured that since my answer to those questions was going to be the same (i.e., that I could be fair and impartial and not favor one side over the other), I did not want to waste everyone's time.

Mann argues that juror no. 3 could not have known what questions would be asked, as the judge did not start questioning each juror until after the jurors had raised their cards. However, by the time the district court asked the potential jurors if any of them knew the Manns, the court had already asked the jury if any of them knew anything about the case; whether they were related by blood or marriage to the parties or were associated with them through any business or social relationship; or otherwise knew any of the anticipated witnesses, including Jason Davis, P.A.,

---

been made or address the district court's conclusion that juror no. 3's responses did not present a basis for a for cause challenge.

Dr. Lofgran; and finally, whether any of them knew the Manns. Prior to asking if anyone knew the Manns, numerous prospective jurors provided positive responses to these other questions, and in each instance the court made the same inquiry: (1) would the juror's knowledge of the individual prevent him/her from acting impartially; (2) would it cause the juror to give greater or lesser weight to any statement the witness would make; and (3) could the juror set aside that knowledge and evaluate the case based solely on the evidence and the testimony presented. Thus, juror no. 3 likely had a very good idea of the types of questions he would be asked if he raised his card.

The district court assessed the evidence and found that even if juror no. 3 raised his card, his "correct response" would not have "provided a valid basis for a challenge for cause."[5] The court further explained that juror no. 3's declaration showed that, rather than having an "axe to grind" or animosity toward Mann, his casual knowledge of the Manns would not have affected his ability to be fair or impartial. Having analyzed both the speculative conclusion by Mann and the testimony provided by juror no 3, the district court correctly determined that the evidence did not support a finding that if juror no. 3 had raised his card and given a correct response, it could have resulted in a successful challenge for cause.

Additionally, Mann alludes to juror misconduct on the part of juror no. 3 by stating, during deliberations, that Mann had just purchased a new pickup, so she did not need the money. Mann asserts that the observation was extraneous and cites to a dictionary definition of "extraneous." Again, Mann does not address the district court's findings and conclusions on the issue, legal standards associated with a determination that something is extraneous during jury deliberations, or prejudice specific to this statement.

Regardless, in analyzing an extraneous information allegation, it must first be determined whether admissible evidence exists supporting such a claim. *Levinger*, 139 Idaho at 196, 75 P.3d at 1206. Idaho Rule of Evidence 606(b) addresses the admissibility of juror testimony and the way it may be used to impeach a verdict. Specifically:

(b) During an Inquiry into the Validity of a Verdict or Indictment.

---

[5] We note that Mann asked no follow-up questions of the jurors who indicated they knew of the parties or witnesses. In addition, there is no evidence Mann said anything to her trial counsel controverting or expanding upon the answer any juror gave regarding knowledge of or a relationship with her, Harve, or any witness, or advised counsel of a relationship with juror no. 3.

9

(1) Prohibited Testimony or Other Evidence. During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment.

(2) Exceptions. A juror may testify about whether: (A) extraneous prejudicial information was improperly brought to the jury's attention; (B) an outside influence was improperly brought to bear on any juror; or (C) the jury determined any issue by resort to chance; or (D) a mistake was made in entering the verdict on the verdict form.

I.R.E. 606(b). The allegations set forth in the jury foreperson's declaration were, by her own admission, statements made during deliberations. Thus, unless the statements offered by the jury foreperson fall under one of the recognized exceptions, they are prohibited under Rule 606(b)(1).

Turning to I.R.E. 606(b)(2)(A), the information must be both extraneous and prejudicial. *Miller v. Haller*, 129 Idaho 345, 350, 924 P.2d 607, 612 (1996). Jurors are allowed to bring with them their background, knowledge, and experience, therefore, only a specific fact brought to a juror's attention outside of the trial itself should be considered extraneous. *Id.* As to whether juror no. 3's comment was extraneous, the district court noted that it was unclear how juror no. 3 came to possess the information and that it was entirely possible that it was part of the juror's background living in a small community.

The district court noted that even if this information was extraneous, it was not prejudicial. First, there was no evidence that his comment was heard by jurors other than the foreperson. Second, the court noted that because the jury did not reach damages, the notion of whether the plaintiff needed money was not prejudicial. Mann fails to demonstrate that the district court's findings and conclusions are erroneous. The court did not err in denying Mann's motion for new trial based on juror no. 3.

### b. Jury consideration of comparative fault

Mann argues that it was misconduct for the jurors to consider the Manns' comparative fault, and the district court erred in denying her motion for new trial on this basis. The foreperson's declaration, submitted in support of the motion for new trial, states that juror no. 1 suggested that the Manns were at fault for not returning to the emergency room and that other jurors agreed. Mann argues that a comparative fault defense was not raised, and the question of comparative fault was not on the jury verdict form or discussed in any of the proposed jury instructions. Mann argues

10

the jurors failed to follow the district court's instructions and decided the case in violation of those instructions.

As juror no. 1's comment occurred during jury deliberations, pursuant to I.R.E. 606(b)(2)(A), the information must be both extraneous and prejudicial. Juror no. 1's comment that the Manns were responsible for their own problems because they did not return to the emergency room was not extraneous because it was not a specific fact brought to the jury's attention from outside of the trial. In *Miller*, the Supreme Court held that information from jurors' background, knowledge, and experience is not extraneous. *Miller*, 129 Idaho at 350, 924 P.2d at 612. However, a specific fact brought to a juror's attention outside the trial itself is extraneous. *Id*. Juror no. 1's opinion that the Manns were at fault is borne of common background and experience and is not a specific fact brought to the attention of the juror from outside the trial.

The district court also noted that:

> Plaintiff also argues that the jury considered "comparative fault" but does not show that the jury considered any extraneous, prejudicial evidence to support this assertion. The foreperson states that "I believe the case was decided, taking into account Harve Mann's fault . . . ." There is simply insufficient evidence that the jury acted improperly. Further, this did not relate to whether PA Davis breached the standard of care. The jury found that he did not.

Mann produced no evidence corroborating the jury foreperson's assertions that the jury decided the case considering Harve's fault. The jury's analysis started and ended with determining whether Davis complied with the appropriate standard of care. Thus, no misconduct occurred, and the district court did not err in denying Mann's motion for new trial on this basis.

**B. Admission of Evidence**

**1. Exhibit**

Mann argues that the district court erred by sustaining a hearsay objection to an exhibit regarding adult hypertension. Mann claims the exhibit was a document generated by NCMC and discussed that "untreated or uncontrolled hypertension can cause . . . a stroke . . . and other problems." Mann asserts that this document confirms NCMC's knowledge that hypertension could cause or result in a stroke, which is the circumstance suffered by Harve.

NCMC objected to the admission of the hypertension document. Mann argued the document was admissible as a "statement by a party-opponent" and was a "record generated by" NCMC. The district court sustained the objection based on hearsay and a lack of foundation. Mann claims the document is admissible because it was generated in-house by NCMC and given

11

to patients with hypertension. Mann claims that causation is a material issue in most medical malpractice cases, including this case. Thus, exclusion of this document caused Mann substantial prejudice and constituted reversible error.

Idaho Rule of Evidence 802 provides that, because "hearsay" is not admissible, and unless the proffered evidence meets one of the recognized exceptions or exclusions to the hearsay rule, it cannot be admitted. Hearsay is a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement. I.R.E. 801(c)(1)-(2). The Idaho Rules of Evidence also enumerate certain exceptions to the hearsay rule, and identify other types of statements which are exclusions to the rule, including:

> (2) Statement by Party-Opponent. The statement is offered against an opposing party and:
> > (A) was made by the party in an individual or representative capacity;
> > (B) is one the party manifested that it adopted or believe to be true;
> > (C) was made by a person whom the party authorized to make a statement on the subject;
> > (D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or
> > (E) was made by the party's coconspirator during and in furtherance of the conspiracy.

I.R.E. 801(d)(2).

Davis testified that the hypertension document was perhaps produced from Cerner, an electronic health record system used by NCMC, and that in the past he had given this document to patients with hypertension. Mann does not deny that the document was not authored by an agent of NCMC. Davis testified that the document "doesn't have the normal sort of markings, but it appears to be in the style of what would appear . . . through Cerner." Mann failed to demonstrate that the document was a "statement" by NCMC. While the document may have been produced by NCMC, it has not been shown to have been "generated in-house" such as a medical record or other document created by an agent of NCMC. As NCMC counsel noted, the document was not a medical record, but rather a medical treatise. Mann's argument rests solely on the assumption that the exhibit was generated or created by NCMC, rather than potentially being created outside of NCMC, but available via Cerner. There is no evidence the document is a statement of a party-

12

opponent as contemplated by I.R.E. 801(d)(2). *See Oksman v. City of Idaho Falls*, 173 Idaho 839, 549 P.3d 1086 (2024).[6] Therefore, there is no basis for excluding the document on this ground.

In addition, Mann claims that the exclusion of the hypertension exhibit resulted in "substantial prejudice" and therefore constituted "reversible error." Mann asserts that causation is an issue in most medical malpractice cases, and this case was no exception. However, there appears in the record no dispute that Davis was generally aware that hypertension can cause a stroke, which is the subject of the exhibit. The relevant question is whether hypertension was a causative problem in this case. The hypertension exhibit cannot answer that question; therefore, exclusion of the exhibit is not prejudicial. Moreover, the jury in this case never reached the issue of causation.

Idaho Rule of Civil Procedure 61 addresses harmless error, and provides:

> Unless justice requires otherwise, no error in admitting or excluding evidence, or any other error by the court or a party, is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the Court must disregard all errors and defects that do not affect any party's substantial rights.

I.R.C.P. 61. Mann fails to establish error or prejudice. Mann's only assertion of prejudice was that the excluded evidence impacted her causation case, however the jury never reached the issue of causation. Mann has not shown that exclusion of the hypertension exhibit affected her substantial rights. Thus, the district court properly sustained NCMC's objection to the exhibit.

### 2. Expert witnesses

#### a. Disclosures

The district court denied Mann's motion to exclude expert testimony. Mann claims that the district court committed reversible error by allowing all three of NCMC's retained expert witnesses to testify when NCMC had not complied with the expert disclosure requirements in I.R.C.P. 26(b)(4). Mann asserts that NCMC's experts did not disclose specific scientific journals or articles upon which their testimony relied.

Idaho Rule of Civil Procedure 26(b)(4) provides that a party must disclose a complete statement of all opinions to be expressed and the basis and reasons for the opinion must be

---

[6] In her opening brief, Mann raised the "so-called 'business records' exception," as a basis for admission of the hypertension document. Mann did not argue the business records exception to the hearsay rule in the district court. Generally, issues not raised below may not be considered for the first time on appeal. *Sanchez v. Arave*, 120 Idaho 321, 322, 815 P.2d 1061, 1062 (1991).

disclosed; and the data or other information considered by the witness in forming the opinions. Mann argues that the district court allowed NCMC's experts to tangentially reference non-disclosed resources upon which the experts had relied to support their respective opinions.

The NCMC disclosures included detailed descriptions of the materials and data relied upon by the experts. Specifically, that they would rely upon "medical education, training, experience, skill and expertise," as well as the expert's "continuing medical education and ongoing review of literature in connection with [the expert's] areas of work and practice." Further, the disclosure identified the "pertinent medical records, imaging and other documents relating to Harve." Additional disclosure indicated that the expert may rely on "relevant medical research and/or literature related to any of the subject matters at issue," as well as "any other medical literature identified in plaintiff's expert disclosures as a basis for [the expert's] opinions." The disclosures did not list any specific medical literature.

NCMC's experts ultimately did not rely on any specific data, medical literature, publications, or journals for their testimony. The district court ruled as such:

> The expert disclosures, the court does find, are sufficient. While there is a complaint from the plaintiff that Dr. Hajjar did not reference specific journals that he was relying upon, the representation by the defense is that he was not going to reference specific journals in his testimony. To the extent that he would be relying on specific journals, I would not allow testimony with respect to specific journals.
> The plaintiff has argued that failure to disclose more specific information in the expert disclosures has placed them at a disadvantage, however they have not articulated any specific prejudice.
> The court finds that the testimony is allowable and that [it] meets the requirements of Idaho Code §§ 6-1012 and 6-1013.

Experts are not required to rely on specific learned treatises, data, medical literature, publications, or the like as a prerequisite to qualifications or expert opinion. Relying on one's education and training does not mean the expert has relied on specific literature in forming the expert's opinions in the case. Idaho Rule of Evidence 702 permits experts to rely on "knowledge, skill, experience, training, or education" to qualify them to testify when such testimony will assist the trier of fact in understanding the evidence or determining a fact in issue.

Finally, Mann contends that the experts "got [their] information from somewhere," and must have looked at a study or journal in forming their opinions. Mann, however, points to no specific testimony in which the experts rely on or cite to medical literature. The district court specifically stated that it would not allow testimony if based on such literature, providing Mann

an opportunity to again object at trial. Mann points to no such incidences in the trial record. The district court did not err in denying Mann's motion to exclude expert witnesses.

### b. Cumulative Testimony

Mann contends that NCMC's expert testimony was cumulative and redundant and, thus, under I.R.E. 403, the district court erred in failing to exclude the testimony. Idaho Rule of Evidence 403 provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice including cumulative evidence. Mann provides no examples of actual duplicative trial testimony, and instead simply relies on NCMC's two experts as having the same medical specialty and "same opinions." While the expert witness disclosures may be similar, that does not automatically mean that their trial testimony is cumulative.

In denying Mann's motion to exclude expert testimony, the district court explicitly allowed for objection if testimony from NCMC's experts became cumulative or redundant:

> The court also wants to address the argument that the testimony of Dr. Hajjar and Dr. Tauskky is duplicative. And, certainly, the plaintiff will be free to object if the testimony becomes duplicative, but I think the expert disclosures and the information provided by the defense does indicate that the testimony might not be duplicative.
> So, I will allow both to testify, with the caveat that the plaintiff is free to object if the testimony does become repetitive and duplicative.

When a trial judge elects to hear the foundation for the evidence instead of ruling definitively on a motion in limine, counsel opposing the evidence must continue to object as the evidence is presented. *Schwan's Sales Enterprises, Inc. v. Idaho Transp. Dep't.*, 142 Idaho 826, 833, 136 P.3d 297, 304 (2006).

Mann cites no instance where she took the opportunity to object to duplicative testimony. NCMC points out two occasions where Mann objected during trial to NCMC's third expert witness regarding I.R.E. 403 concerns. The first objection was in relation to a question regarding standard of care and was overruled by the district court. However, the questioning by the attorney following the objection shifted away from standard of care, so this was never answered. The second objection occurred when the questioning returned to standard of care; however, this time the district court sustained the objection, so the standard of care question was never answered. Mann has shown neither duplicative nor cumulative testimony or error by the district court in allowing the expert testimony. The question of whether evidence sought to be presented is cumulative is a

15

factual issue and a trial court's finding on this issue will not be overturned if supported by substantial and competent evidence. *Ballard v. Kerr*, 160 Idaho 674, 695, 378 P.3d 464, 485 (2016). Mann has failed to show that the district court erred in allowing the experts to testify.

**E.** **Attorney Fees**

Both parties request attorney fees and costs on appeal. This Court, in any civil action, may award reasonable attorney fees to the prevailing party. I.A.R. 41. Because Mann is not the prevailing party, she is not entitled to attorney fees. NCMC requests attorney fees pursuant to I.C. § 12-121, which permits a court to award reasonable attorney fees to the prevailing party when the case was brought, pursued, or defended frivolously, unreasonably, or without foundation. Where a non-prevailing party continues to rely on the same arguments used in front of the lower courts, without providing additional persuasive law or bringing into doubt the existing law on which the court based its decision, an award of attorney fees under I.C. § 12-121 may be appropriate. *Plasse v. Reid*, 172 Idaho 53, 65, 529 P.3d 718, 730 (2023). While we have rejected Mann's arguments on appeal, we cannot say that her appeal is frivolous.

## IV.

## CONCLUSION

Mann has not shown instructional or evidentiary error or juror misconduct warranting a new trial. Accordingly, the judgment of the district court is affirmed. Costs, but not attorney fees, are awarded to North Canyon Medical Center.

Judge HUSKEY and Judge LORELLO **CONCUR**.